JOHN R. DITMARS, GLADYS L. REED AND KATHRYN C. WOLFORD, PLAINTIFFS-APPELLANTS, v. CAMDEN TRUST COMPANY, INDIVIDUALLY AND AS TRUSTEE UNDER THE WILL OF JOHN R. DITMARS, DECEASED, ET AL., DEFENDANTS-RESPONDENTS.

Argued October 14, 1952—Decided November 3, 1952.

473

474

*Mr. Francis E. P. McCarter* argued the cause for the appellant, John R. Ditmars (*Messrs. McCarter, English & Studer*, attorneys).

*Mr. J. Mitchell Reese* argued the cause for the appellants, Gladys L. Reed and Kathryn C. Wolford (*Messrs. Scammel & Reese*, attorneys).

*Mr. Walter R. Carroll* argued the cause for the respondents (*Messrs. Carroll, Taylor & Bischoff*, attorneys).

*Mr. I. Herbert Levy*, special master, argued the cause *pro se.*

*Mr. Douglas Beck Tyler* argued the cause for the estate of Joseph Beck Tyler, deceased (*Messrs. Tyler & Tyler*, attorneys).

The opinion of the court was delivered by

BURLING, J. This matter consists of appeals brought by the plaintiffs, John R. Ditmars, Jr., Gladys L. Reed and Kathryn C. Wolford, principally to review portions of a final judgment entered in the Superior Court, Chancery Division on September 20, 1951, and incidentally to review certain correlative orders of that court, the most recent here involved having been filed February 15, 1952, concluding protracted litigation of the defendant Camden Trust Company's accounting as trustee of the estate of John R. Ditmars, deceased, and of claims of plaintiff John R. Ditmars, Jr., against the defendant Camden Trust Company in its individual corporate capacity. The appeals are resisted not only by the defendant Camden Trust Company in both its aforesaid capacities, but also by the representatives of the estate of former counsel for the defendant (in support of allowances for his own services and costs), and by the special master to whom the matter of

the trustee's account was referred (in support of his own fee as master). The appeals were addressed to the Superior Court, Appellate Division, but prior to hearing there certification was allowed upon our own motion.

To obtain the proper perspective for an intelligent declaration of the law of this case it is incumbent upon us first to delineate somewhat in detail the history of antecedent facts and procedural ramifications which this conflict has engendered since the demise of the plaintiffs' father, whose testamentary directions constitute the fountainhead of their strife.

The testator, John R. Ditmars, then a resident of Haddon Heights, Camden County, New Jersey, died on December 21, 1925, survived by his widow, Katharine L. Ditmars, and three children of a prior marriage, namely, John R. Ditmars, Jr. (hereinafter called Ditmars, Jr.), Gladys L. Reed and Katharine (Kathryn) C. Wolford. The decedent's last will and testament dated May 17, 1924, was admitted to probate by the Surrogate of the County of Camden, State of New Jersey, on January 4, 1926, and Katharine L. Ditmars and Camden Safe Deposit and Trust Company were appointed executors of his estate. The testator (Item Fourth of the will) devised and bequeathed his entire residuary estate to Camden Safe Deposit and Trust Company, as trustee, in trust "To invest the same and to pay the income" to his widow, Katharine L. Ditmars, for life, and upon her death to "pay all the rest, residue and remainder" of his estate to his three children, the present plaintiffs. Testator also provided as follows:

"FIFTH: It is my will that all stocks, bonds and other securities belonging to me shall form part of the trust fund created by my will, but my trustee, with the concurrence in *writin* of my wife, the said Katharine L. Ditmars, may vary or alter the aforesaid investments, whenever in its judgment it shall be deemed to be for the best interests of my estate so to do. I direct, however, that security of the investment and stability of dividend or interest return, shall be the controlling factors in the choice of any such new investments.

SIXTH: If at any time the income arising from the trust fund hereby created shall, in the judgment of my wife, be inadequate for

her comfortable support and maintenance, I authorize my trustee, on the application of my wife, to transfer to her absolutely such portion of the corpus of the trust fund as shall in its judgment be wise and provident under the circumstances, bearing in mind always that my chief object and desire is to conserve the principal of the trust fund so as to secure to my wife a reasonably certain fixed and adequate income during her life."

The executors filed the inventory and appraisement of the estate on February 17, 1926, showing a total of $107,625.70.

Testator's son, John R. Ditmars, Jr., appealed the surrogate's decree of probate on July 3, 1926 to the former Camden County Orphans' Court. Suffering an affirmance there, he appealed to the former Prerogative Court, which subsequently also affirmed the decree of probate. Thereupon he took a further appeal to the former Court of Errors and Appeals.

During this period in which John R. Ditmars, Jr. was contesting the probate of his father's will, he was also engaged in a suit against his stepmother in another forum. He had brought suit against her in the United States District Court for the District of New Jersey attacking her title to testator's residence in Haddon Heights (title to which had been held by her and the decedent as tenants by the entirety) on the ground that his stepmother's marriage to his father was not lawful. From the decree in her favor entered in that court he had appealed to the Circuit Court of Appeals for the Third Circuit. This appeal was subsequently abandoned (as hereinafter noted).

Pending the will contest, First Camden National Bank and Trust Company was administrator *pendente lite,* its appointment as such by the Camden County Orphans' Court having been made December 18, 1926. Also, the executors had filed on January 10, 1927 their first account covering their actions in collection and settlement of estate interests from their appointment (almost a year before) to the time of appointment of the administrator *pendente lite.* Notice to all parties in interest was given according to law, and it appears that testator's three children, the plaintiffs herein, were

then of full age. The account was allowed by the Camden County Orphans' Court on February 4, 1927, apparently without any objection or exception by or on behalf of any of these plaintiffs.

On October 19, 1928 an agreement of settlement was entered into between Katharine L. Ditmars and Camden Safe Deposit and Trust Company, as executors of the last will and testament of John R. Ditmars, deceased, Katharine L. Ditmars, individually, and Ditmars, Jr. This agreement recited the pendency of the above mentioned appeals in the former Court of Errors and Appeals and the United States Circuit Court of Appeals and Ditmars, Jr.'s declared intention to bring suit to impress on the assets of the estate a trust for specific performance of an alleged contract entered into between himself and his father the object of which was to divide his father's estate into four parts, one of which was to be received outright by Ditmars, Jr., and also his asserted claim for $37,000 for the value of assets he allegedly owned but which were purportedly sold by his father during his lifetime without Ditmars, Jr.'s consent. Among other things in this agreement, Ditmars, Jr. agreed to abandon his litigation and Katharine L. Ditmars renounced all her rights under Item Sixth of the testator's will (quoted *ante*); she also agreed to receive only a stated income of $3,600 per annum from the trust assigning the balance of the net income therefrom to Ditmars, Jr. (a supplemental agreement was later executed to reduce her income to $1,800 per annum). And the trustee agreed as follows:

"10. Camden Safe Deposit and Trust Company, as trustee under the will of John R. Ditmars, deceased, agrees with John R. Ditmars, Jr., that in addition to the written consent of Katharine L. Ditmars called for by the Fifth clause of the said will, it will not, without the order of a court of competent jurisdiction, vary or alter the investments which it may receive as such executor and trustee, without the concurrence in writing of John R. Ditmars, Jr."

As a result of the agreement of October 19, 1928, the pending litigation in the will contest was terminated prior

to hearing of the matter by the former Court of Errors and Appeals, and Ditmars, Jr. forebore . the assertion of his other alleged claims against the estate. Also, Ditmars, Jr. abandoned his appeal, pending in the Circuit Court of Appeals, in his individual suit against Katharine L. Ditmars. Thereafter the administrator *pendente lite* filed its account, on notice to all parties in interest, and this account was allowed by the Camden County Orphans' Court on December 7, 1928, and, as was the case with the executors' first account (*ante*), there appear to have been no exceptions filed thereto.

On March 7, 1930, on due notice to all parties in interest, the second and final account of Katharine L. Ditmars and Camden Safe Deposit and Trust Company as executors of the estate of John R. Ditmars, deceased, was allowed by the Camden County Orphans' Court. The plaintiffs herein were parties to the accounting proceedings and were represented by counsel, but the record before us shows no exceptions taken by them to this accounting.

In June 1930 Ditmars, Jr. began to borrow successive sums of money for his own individual purposes from Camden Safe Deposit and Trust Company, in its separate corporate capacity. Each loan was evidenced by a demand promissory note. The first loan, made on June 6, 1930, was in the amount of $7,500 and carried interest at 6% per annum. On June 6, 1930, as collateral security for this and any subsequent loans, Ditmars, Jr. executed and delivered to Camden Safe Deposit and Trust Company an assignment of his entire interest in his father's estate. This assignment agreement provided as follows:

"I, the said John R. Ditmars, Jr. * * * do * * * hereby authorize, empower and direct" the defendant as trustee "to use and apply any and all money now due or which hereafter may become due me in liquidation and settlement of said loan or loans, together with any and all unpaid interest thereon."

On September 24, 1935, defendant in its individual corporate capacity and Ditmars, Jr. entered into an agreement con-

currently with a further loan to Ditmars, Jr. containing the same authorization to defendant as trustee. And from time to time, pursuant to the aforesaid authorizations, the defendant as trustee paid to itself in its separate corporate capacity income of the estate to which Ditmars, Jr. was entitled (under the October 19, 1928 agreement, *ante*), applying these funds to interest, at 6%, on his loans, and in reduction of principal thereof. At regular intervals defendant sent Ditmars, Jr. statements of these applications of income, at first quarterly, later monthly.

On April 11, 1938 Camden Safe Deposit and Trust Company merged with West Jersey Trust Company under the name of Camden Trust Company.

Testator's widow, Katharine L. Ditmars, life beneficiary of the trust under his will, died on February 26, 1941, and the trust *corpus* thereupon became distributable to the residuary beneficiaries. At that time, Ditmars, Jr.'s current indebtedness to the defendant in its separate corporate capacity was represented by three notes: one dated September 30, 1933, for $25,000; one dated September 20, 1933, for $9,326.53; and one dated September 25, 1935, for $3,000. All of these were demand notes and bore interest at 6%. Demand for payment was made April 15, 1941, but was refused.

On April 23, 1941 Camden Trust Company in its individual corporate capacity instituted suit against Ditmars, Jr. in the former Supreme Court, to collect the amounts due upon the above mentioned three notes of September 1933 and September 1935; on the following day, April 24, 1941, Ditmars, Jr. filed the original bill of complaint in the present suit in the former Court of Chancery, seeking, *inter alia*, to enjoin the Camden Trust Company's law action, to compel Camden Trust Company as trustee under the will of John R. Ditmars, deceased to account in the former Court of Chancery, and that the former Court of Chancery "take jurisdiction * * * of all transactions * * * between" Ditmars, Jr. and the defendant, either individually or as

trustee, as alleged in the complaint. An amended complaint was filed on May 26, 1941. The amended complaint merely added plaintiffs Gladys L. Reed and Kathryn C. Wolford (decedent's daughters) as parties plaintiff.

Shortly thereafter the defendant prepared its account as trustee of the estate of John R. Ditmars, deceased, and filed same in the former Orphans' Court of Camden County. Plaintiffs filed in the former Court of Chancery a petition and order to show cause seeking to restrain defendant from proceeding in the Orphans' Court. This was accomplished by order of the Court of Chancery filed in this cause on July 1, 1941.

On November 25, 1941, as a step in the present suit, the former Court of Chancery filed a decree whereby it took jurisdiction over the administration of the trusts under the will of John R. Ditmars, deceased, ordered defendant as trustee thereof to file its account in the Court of Chancery within 20 days, and referred the matter of the accounting to I. Herbert Levy, Esquire, special master, to audit the account, to determine exceptions, and to report thereon. December 18, 1941 defendant appealed the aforesaid order, but subsequently the appeal was dismissed by consent.

Subsequently, in March 1942 the defendant trustee filed in the former Court of Chancery its final account, pursuant to the decree of November 25, 1941, showing a market value of *corpus* on February 17, 1942, of $150,973.02. The plaintiffs here in April 1942 filed 297 specific exceptions to the account. Many of these exceptions were withdrawn or abandoned by the plaintiffs before or during the hearings before the master. Although the master was in readiness to proceed with hearings, the parties appear to have failed to press the matter until April 12, 1946, when actual hearings began.

In 1946 the plaintiffs, in this cause, petitioned the former Court of Chancery for permission to amend their bill of complaint to enable them to challenge the propriety of sales of certain shares of stock of Homestake Mining Company and of Hercules Powder Company made by the executors in 1926.

Their petition was denied on September 17, 1946, *Ditmars v. Camden Trust Co.*, 138 *N. J. Eq.* 541 (*Ch.* 1946), affirmed *per curiam,* 140 *N. J. Eq.* 420 (*E. & A.* 1947).

The hearings before the master on the exceptions to the trustee's account continued spasmodically until February 17, 1949 and in the meantime, on December 17, 1948, by consent order filed in the Superior Court, Chancery Division (to which the accounting matter was transferred on the effective date of the Judicial Article of *New Jersey Constitution of* 1947), the defendant's law action against Ditmars, Jr. was permitted to be joined with the accounting proceedings by amendment to plaintiffs' complaint

On March 3, 1949 the master filed his report. The defendant as trustee, and the three plaintiffs filed various exceptions thereto. Subsequently the consolidated matters were brought on for trial before the Superior Court, Chancery Division. The master had recommended various surcharges against the defendant and denied others. The Chancery Division approved the master's recommendations with one exception, hereinafter to be discussed, approved interest of 4% on the surcharges which were allowed, refused to consider whether the defendant should be surcharged in connection with the 1926 sales by the executors of the Homestake Mining Company and Hercules Powder Company stock (hereinabove mentioned), approved various allowances of commissions, costs and counsel fees, and decided in defendant's favor so much of the action as related to the controversy between Ditmars, Jr. and itself in its individual capacity. The defendant filed no appeal from the resulting judgment (entered September 20, 1951). The plaintiffs appealed from portions of the judgment adverse to them, and from the trial court's denial of their motion for partial distribution of *corpus* (September 20, 1951—incorporated in final judgment), and motion for construction of the will (denied by order of July 30, 1951), and Ditmars, Jr.'s motion for relief from judgment in relation to the action between him and the defendant in its individual corporate capacity (denied

by order of February 15, 1952). Additional recitals of facts, and of the particulars of the above-outlined rulings of the trial court as necessary to determination of the questions involved on these appeals, will be detailed in the appropriate portions of this opinion. The appeals were addressed to the Superior Court, Appellate Division, but prior to hearing there certification was allowed by this court upon our own motion, as hereinbefore stated.

There are two categories of questions involved in these appeals—those relating to matters substantially pertinent to the administration of the estate of John R. Ditmars, deceased, by the executors and the trustee, and those relating to matters substantially pertinent to the individual transactions between John R. Ditmars, Jr. and the defendant Camden Trust Company.

The first, estate, group of questions involved include: (a) whether the trustee violated its duty in failing to demand certain assets from the executors in this case; (b) whether the trustee violated its fiduciary duty in retaining certain investments beyond the time when they should have been sold; (c) whether the interest charged to the trustee on surcharges was adequate; (d) whether allowances of counsel fees, costs and commissions were improper or excessive; and (e) whether there was an abuse of discretion by the trial court as to distribution of *corpus*.

The second, individual, group of questions involved include: (a) whether usury tainted the transactions between Ditmars, Jr. and Camden Trust Company in its individual corporate capacity, and (b) whether recovery on certain of the loans made by the defendant to Ditmars, Jr. were barred by the six-year statute of limitation (*R. S.* 2:24–1.).

ESTATE MATTERS.

(a) *Receipt by Trustee of Assets from Executors.*

The plaintiffs contend that the defendant as trustee violated its fiduciary duty in failing to insist on delivery to it

by itself and Katharine L. Ditmars, as executors, of 60 shares of stock of Homestake Mining Company and 16 shares of stock of Hercules Powder Company. This stock was owned by the testator at the time of his death. The first account of the executors, covering the year of their performance of duties prior to appointment of the administrator *pendente lite,* shows that they sold the Hercules stock on February 25, 1926 for $2,245, showing a net gain over appraised value of $0.36, and sold the Homestake stock on July 2, 1926, showing a net gain of $337.20. Plaintiffs also assert that the executors had no right to make "a certain payment of income" to testator's widow and failed to make a proper apportionment of dividends received between the widow (life income beneficiary of the trust) and the remaindermen "in connection with certain securities." They admit that all these matters were detailed in the first account of the executors, which was allowed by the Camden County Orphans' Court on February 4, 1927.

The defendant trustee asserts that the plaintiffs are barred from review of the foregoing matters by the allowance of the first account of the executors (February 4, 1927), the final account of the administrator *pendente lite* (December 7, 1928), and the second and final account of the executors (March 7, 1930), and by virtue of the fact that the plaintiffs' application to amend their complaint in this cause to incorporate these same allegedly objectionable transactions was denied by the former Court of Chancery in this cause. *Ditmars v. Camden Trust Company, supra,* (138 *N. J. Eq.* 541) affirmed *eo nomine, supra,* by the former Court of Errors and Appeals (140 *N. J. Eq.* 420).

The plaintiffs seek to avoid the effect of the earlier decisions in this cause, asserting that those decisions were overruled by implication by the decisions rendered by this court in *Dickerson v. Camden Trust Co.,* 1 *N. J.* 459, 467 (1949), and *Bankers Trust Co. v. Bacot,* 6 *N. J.* 426, 436 (1951). They premise this argument on the principle expressed in those cases as to acceptance of securities by a trustee in breach

of its trust, and assert that mere lapse of time is no bar to inquiry into such matters. Pursuing this theory, they assert that during the present stage of these proceedings, *i. e.,* the hearings before the master and the subsequent final hearing in the Chancery Division of the Superior Court, their effort was not to amend their complaint but to introduce additional exceptions to the trustee's account under their general reservation to do so incorporated in their filed exceptions. This general reservation read as follows:

"By reason of the informality of the account and of the insufficiency of the vouchers claimed to be in support thereof, these exceptants are not now sure that there may not be other matters to which upon further facts being shown they should except to as evidence may be developed. They therefore reserve the right to file such additional exceptions as they may be advised."

The plaintiffs justify their resort to this reservation by reliance on the provisions of Item Fifth of the testator's will, where he stated, "It is my will that all stocks, bonds and other securities belonging to me shall form part of the trust fund created by my will * * *." The inference of their argument is that this precluded the executors from selling any portion of the testator's investments, and that the trustee should have insisted that the executors deliver to it the specific securities or investments owned by the testator at the time of his death. It is obvious that this question is inherently different from the situation considered in the *Dickerson* case, *supra.* In the *Dickerson* case, *supra,* the trustee received *unauthorized* investments where they had a duty to receive only cash or legal securities (1 *N. J.* at *pp.* 466–467).

On the merits of the question, however, assuming for the purposes of this discussion that the plaintiffs properly attempted to submit exceptions to the trustee's account in this respect, it appears that a determination may be laid upon a construction of the pertinent provisions of testator's will and upon basic duties of executors. Testator (Item Fourth) devised and bequeathed his residuary estate to the trustee,

in trust, "To invest the same," using no words such as "to hold, retain, invest and keep invested the same," and later (Item Fifth) expressed his "will" that his investments be retained. It is apparent from a reading of these two provisions that the testator understood that the executors in the normal course of settlement of his estate would be required to liquidate some portions of his estate to pay just debts and funeral expenses, and expenses of administration, as well as the total of $2,000 of specific cash bequests contained in Items Second and Third of his will. The portion of Item Fifth adverted to is properly construed not as a mandatory specific bequest of stocks, bonds, etc. (indeed he did not name or describe any of such items), but as a mere power of retention which, however imperative, did not require the delivery to the trustee of *all* the stocks, bonds, etc., owned by the testator at the time of his death.

On this basis the real issue presented by the plaintiffs in this case is whether the executors properly exercised their duties as such, and not whether the trustee received securities or investments other than those it was authorized to receive under the terms of the instrument creating the trust. The liability of the executors for any alleged breach of duty in conservation or settlement of the estate is dependent upon the effect to be accorded the Orphans' Court decrees approving and allowing their two accounts. That the matters now objected to by the plaintiffs were detailed in the executors' accounts as allowed is admitted by them, and in these circumstances the beneficiaries are concluded from challenging directly the propriety of the *executors'* conduct. *Dickerson v. Camden Trust Company, supra* (1 *N. J.,* at p. 467).

Further, if for the purpose of disposition of the plaintiffs' contention we may assume that the trustee was obligated to intervene in the proper administration and settlement of the estate by the executors, what was its duty in that respect under the circumstances of this case, where three accountings of the estate were approved by the Orphans'

Court without objection of the parties in interest (the present plaintiffs who were the beneficiaries of the trust), and the time when the sales of stock adverted to were made indicates they were occasioned by need to meet debts and other estate obligations? What should a prudent trustee have done? The estate was involved in litigation which threatened the very existence of the trust and ultimately extended the administration of the estate by the executors for over four years after the death of the testator. Conservation of the estate and payment of debts and funeral expenses were the duty of the executors. What should a prudent trustee have done under these circumstances? Should it have attacked the executors' accounts? Was it not justified in concluding that under the circumstances the trust estate would be better served by refraining from the expenditure of trust funds in what was thought a futile venture? As we said on a somewhat comparable situation in *Bankers Trust Co. v. Bacot, supra* (6 *N. J.*, at *p.* 442):

"* * * The difficulty of decision of a trustee in such a situation is apparent. To hold a trustee liable for failure to make the proper decision under such circumstances appears to place too heavy a burden upon it. * * *"

Further, the decision of the former Court of Chancery and former Court of Errors and Appeals in this case were not opposed to the decisions of this court in the *Dickerson* and *Bankers Trust Co.* cases, *supra*. The aforesaid determinations in this cause were based upon principles of estoppel and not upon mere delay. We are of the opinion that no change in circumstances has occurred to render the same. principles inapplicable to the present stage of the proceedings. To hold otherwise under the circumstances of this case would be to permit the plaintiffs to do by indirection that which they may not do directly. Compare *Home Builders Ass'n of Northern N. J. v. Paramus Boro.*, 7 *N. J.* 335, 342 (1951). The plaintiffs were properly precluded

from introducing these subjects of exception into these proceedings.

(b) *Retention of Investments.*

(1) *International Match Corporation.* The testator owned 120 shares of International Match Corporation cumulative participating preference stock which was inventoried by the executors at a value of $56 per share, or $6,720. These shares were transferred to the trustee after the allowance of the executors' second and final account on March 7, 1930, and formed part of the trust *corpus.* It was not sold, the corporation went into bankruptcy in April 1932, and the stock became worthless. In the trustee's account this stock was written off as a total loss. The plaintiffs took exception thereto. In his report the special master, after reviewing the evidence, recommended that the trustee should not be surcharged for retention of this stock. The plaintiffs took exception to the master's report, but the report in this respect was confirmed by the judgment of the Superior Court, Chancery Division. Plaintiffs on these appeals assert that the trustee should have been surcharged for failure to make timely sale of this stock.

In Item Fifth of his will, quoted *ante,* the testator authorized retention of stock owned by him as part of the trust *corpus,* providing that when it deemed a change in such investments to be for the best interests of the estate it could alter or vary the same with the concurrence in writing of the income beneficiary, Katharine L. Ditmars, indicating that security of the investment and stability of dividend or interest return were deemed by him to be of principal importance.

International Match Company was a Delaware corporation controlled by the Swedish Match Company, a foreign corporation having its principal place of business in Sweden. International was principally a holding company of stocks of numerous companies which had their operation and place of business outside the United States. It paid a regular

488

dividend of $2.60 per share and an extra dividend of $0.60 per share from 1926 to 1929. In 1930 and in 1931 it paid a regular dividend of $2.60 per share and an extra dividend of $1.40 per share. The dividends were paid out of earnings and the corporation covered its dividend requirements about 4½ times. The corporate net income for 1929 was $20,623,-530; for 1930, $20,023,626. Its current assets for the year ending December 31, 1929 were $23,615,531, liabilities $14,-859,996. For the year ending December 31, 1930, current assets were $22,911,765, but liabilities were only $8,826,481. In 1932 International paid its regular dividend of $0.65 per share and an extra dividend of $0.35 per share for the first quarter (the last dividend paid). In 1931 it had floated a $50,000,000 debenture bond issue in the United States. On March 12, 1932 its president committed suicide. On April 19, 1932 it filed a voluntary petition in bankruptcy. The trustee in bankruptcy in its report (filed October 11, 1935) stated that the books and published financial statements of International at all times prior to the bankruptcy indicated it was in flourishing condition and had large earnings, and that it had paid large sums annually to the United States as income taxes.

Plaintiffs claimed that the defendant trustee had or should have had information prior to 1930 which would have indicated its earnings were fictitious, but offered no proof thereof. Further, plaintiff Ditmars, Jr. admitted he knew of no financial service that in 1930 or 1931 gave any indication that there was anything wrong with the financial security of International. The 1930-1931 market fluctuation testified to was shown to be general, and not confined to International. And there is no evidence from which any inference may be drawn that the defendant acted in bad faith in failing to dispose of this stock even for salvage purposes.

The rule in regard to retention of investments by trustees is that they act in good faith, with ordinary care, caution and discretion and within the scope of their powers, and they

will not be held liable for mere mistakes, if such there were, resulting from mere errors of judgment and not proceeding from any fraud, gross carelessness or indifference to duty on their part. See *In re Koretzky,* 8 *N. J.* 506, 524 (1952); *Blauvelt v. Citizens Trust Co.,* 3 *N. J.* 545, 554 (1950). This is settled law and has been incorporated in our statutes. See *R. S.* 3 :16–12 and *R. S.* 3 :16–1(*u*) (as amended). The most apposite expression thereof seems to be *In re Griggs,* 125 *N. J. Eq.* 73, 76 (*Prerog.* 1939), affirmed *per curiam, sub nom. In re Paterson National Bank,* 127 *N. J. Eq.* 362 (*E. & A.* 1940). In the *Griggs* case, we note the trustee corporation was held not liable for the retention in the trust of shares of stock in itself, and it was held not to have breached the duty of undivided loyalty to the trust although that stock fell on the market from $325 per share in 1931 to $73 per share in 1933. We find nothing in the record to indicate lack of good faith and diligence on the part of the defendant trustee in connection with the retention of the stock of International Match Corporation. *Cf. In re Cross,* 117 *N. J. Eq.* 429 (*E. & A.* 1934).

(2) *The "German" bonds.* Plaintiffs Gladys L. Reed and Kathryn C. Wolford contend that the defendant trustee breached its duty and should be surcharged (·as was recommended by ·the master) for failure to sell certain bonds, collectively referred to in these proceedings and in the filed opinion of the Superior Court, Chancery Division (10 *N. J. Super.,* at *p.* 334), as the "German" bonds. These were one $1,000 bond of the Free State of Bavaria, one $1,000 bond of the State of Bremen, and two $1,000 bonds of the City of Cologne, and they were sold by the defendant as trustee on April 18, 1939 for a total of $665. These plaintiffs' exceptions to the trustee's account claimed that the bonds should have been sold sooner at less loss. The master concluded that they should have been sold in March 1931 for $3,587.50, and recommended surcharges of $974.16 in favor of Mrs. Reed and of $974.16 in favor of Mrs. Wolford, with interest from February 26, 1941, the date of death of

Katharine L. Ditmars, the income beneficiary of the trust. The Chancery Division disapproved the recommendations of the master in this respect and denied surcharge.

In March 1931 the trustee, believing these bonds should be sold, "referred the matter to Katharine L. Ditmars." There is no response in evidence. John R. Ditmars, to whom the matter was also referred, opposed the sale. In May and June 1931, December 1931 and in 1932 and 1933, there is evidence that the trustee's recommendation of sale was opposed by Ditmars, Jr., and a trust officer of the defendant testified that during the period from 1931 the only reason the bonds were not sold was because of the objection raised either by Katharine L. Ditmars, John R. Ditmars, Jr., or both, they stating what their objections were, or at times Mrs. Ditmars took no action. The witness testified that during the period after 1931 in which these bonds were held he had discussions with Mrs. Ditmars as to the advisability of selling these bonds. He was precluded from testifying further as to the statements made by Mrs. Ditmars by an objection of counsel for Mrs. Reed and Mrs. Wolford laid on the ground "* * * that no matter what Mrs. Ditmars may have said, it would have no bearing upon the question" whether the trustee should have applied "to the Court for direction as to whether they should sell. * * *" There was evidence introduced that the trustee was advised by counsel that the court would not take jurisdiction of such a question where Katharine L. Ditmars disapproved of the contemplated sale of investments. In 1934, it was testified, when the matter had been again broached to Ditmars, Jr. and Mrs. Ditmars, there was a favorable market. And there is evidence that until mid-1933 full interest was paid on the bonds and reduced interest was received through 1937. In 1936 and 1937 no action was taken by the trustee, but in 1938 sale was opposed. In 1939 the trustee again sought approval of Mrs. Ditmars for the sale and this time obtained, apparently on its second letter, her written consent to sale dated March 29, 1939. Ditmars,

Jr. also consented in writing, his letter of April 17, 1939 expressing his consent as follows:

"* * * As Mrs. Ditmars has approved in writing as called for under the terms of my father's will I am forced to go along with her in this matter. Therefore I concur in her decision."

The theme of these plaintiffs' argument is that regardless of the nature of Mrs. Ditmars' control over investments, the trustee breached its duty in failing to obtain her consent to sales of these German bonds in 1931. The whole of the evidence fails to support the plaintiffs' contentions in this regard, and indicates that reasonable efforts were pursued by the trustee to obtain such consent. These plaintiffs also assert that the trustee breached its duty in binding itself in the October 19, 1928 agreement, hereinbefore adverted to, to also obtain the consent of Ditmars, Jr. This is an academic question, for it is apparent that Ditmars, Jr. considered himself bound by Mrs. Ditmars' decision, and there is no evidence that at any time her consent was obtained and not acted upon by virtue of his opposition. We are of the opinion that the retention of these German bonds was required by the provisions of Item Fifth of the will and that the defendant trustee fully performed its duty in the premises under the pertinent decisions and statutory provisions. See *In re Koretzky, supra; Blauvelt v. Citizens Trust Co., supra; In re Griggs, supra; In re Cross, supra;* and *R. S.* 3:16–12 and *R. S.* 3:16–1(*u*) (as amended), *supra.*

(c) *Interest on Surcharges.*

■ The plaintiffs contend that the trial court erred in affirming the master's recommendation for payment by the defendant trustee of interest at the rate of 4% on the surcharges which were allowed and adjudged, asserting that the rate should have been 6%. The defendant trustee asserts that there is ample authority for the application of the rate of 4%. The reported decisions vary, indicating that the allowance of interest on surcharges, and the rate thereof, are

discretionary matters. It was so held in *State v. National Surety Corp.*, 17 *N. J. Super.* 137, 141–142 (*App. Div.* 1952), certification denied 9 *N. J.* 287 (1952). *Cf. Liberty Title & Trust Co. v. Plews*, 6 *N. J. Super.* 196, 212 (*App. Div.* 1950), modified on other grounds, 6 *N. J.* 28 (1950). We are of the opinion that no abuse of discretion in this respect is indicated by the record in this case.

(d) *Commissions on Income.*

■■ Plaintiff Ditmars, Jr. contends that the defendant trustee should have been surcharged for taking income commission at 5%. This assertion is based upon plaintiff's exception No. 55 to the trustee's account. The defendant trustee contends that this exception was withdrawn.

There were three groups of exceptions filed by plaintiffs relating to income commissions. Exceptions 25 to 34, inclusive, covered the period from March 31, 1930 to December 22, 1933, during which the trustee deducted 5% commission; exceptions 35 to 48, inclusive, covered the period from June 25, 1934 to April 1, 1941, during which the trustee deducted a 2% commission; and exceptions 49 to 57, inclusive, covering the period from April 1, 1941 to January 30, 1942, during which the trustee deducted 5% commission. Counsel for the three plaintiffs at the hearing before the master stipulated in open court they were not pressing the question of deduction of commissions but questioned the amount and withdrew exceptions 25 through 57 "except as to rate."

Both the master and the trial court held that this stipulation bound the plaintiffs as to any question of time or propriety of the deduction of income commissions during the period designated in the exceptions, and determined that the rate of 5% was fair and reasonable. We concur in the judgment of the Chancery Division in this respect.

(e) *Distribution.*

The plaintiffs assert that the trial court abused its discretion in granting partial distribution of only 750 shares

of DuPont stock to each of Mrs. Reed and Mrs. Wolford. Plaintiff Ditmars, Jr. also asserts that he should have been included in the partial distribution.

The defendant trustee argues that it did not resist plaintiffs' motion for partial distribution (as to Mrs. Reed and Mrs. Wolford), but left the amount to the discretion of the trial court. The defendant trustee argues in support of the trial court's exercise of discretion, that after the present litigation is terminated it will be necessary for the trustee to file a final account bringing the accounting down to the date thereof from December 1941, the approximate closing date of the account involved in the present litigation, and that this will involve further charges and expenses with the possibility of additional litigation. Mrs. Reed and Mrs. Wolford in their reply brief "submit that no reply is necessary to defendant's comments" on this question.

██ Under the circumstances of this case we are not persuaded that the trial court abused its discretion, although prior to such distribution as was allowed the estate held 4,052 shares of DuPont stock. The plaintiffs each sought 1,250 shares, and we are unable to say that 750 shares each was so grossly inadequate an allowance as to constitute an abuse of discretion.

Insofar as Ditmars, Jr. is concerned the situation is more complex. The record discloses that the defendant trustee, on the hearing on the motion for distribution (July 24, 1951), claimed that there was an outstanding income deficit chargeable to Ditmars, Jr. of $1,200 or $1,300. Ditmars, Jr. denied this, asserting that this factor was involved in the matter of a supplemental account filed by the trustee in 1945, which he admitted was not before the court. The trial court under these circumstances appears to have determined that the trustee's suggestion that distribution to Ditmars, Jr. could be made if he would agree that the income deficit, if proved in subsequent proceedings on final accounting, would be then payable from his share of *corpus*. The final judgment was entered September 20, 1951. Ditmars, Jr. appealed. It

appears from the affidavit filed by counsel for Ditmars, Jr. in the Superior Court, Appellate Division, during the pendency of these appeals and prior to certification by this court, that negotiations between counsel for Ditmars, Jr. and the defendant-trustee resulted in an agreement whereby the trustee agreed to transfer 750 shares of DuPont stock to Ditmars, Jr. and the latter executed a release therefor. There was an attempt by the trustee to perfect this transfer, but DuPont refused to effect it in view of an outstanding lien of the United States Government thereon for unpaid 1941 income tax of Ditmars, Jr. Ditmars, Jr. then moved the Superior Court, Appellate Division, for an order directing the trustee to pay to him a $750 dividend received on or about December 14, 1951 on these 750 shares of DuPont stock, premising the motion on the ground that the failure to pay the 1941 income tax was the result of defendant Camden Trust Company's refusal to prepare Ditmars, Jr.'s personal 1941 income tax return and pay the tax. Ditmars, Jr. admits in his briefs before this court that this motion was abandoned when the certificates for the 750 shares of stock and the $750 dividends were received by his counsel from the defendant trustee.

Upon this posture of the litigation and negotiations between the parties we are of the opinion that the question whether the trial court abused its discretion in denying partial distribution to Ditmars, Jr. is moot, or at least Ditmars, Jr. is estopped to press the point on this appeal.

## THE INDIVIDUAL STATUS.

There is included in these proceedings a law action between the defendant Camden Trust Company in its individual corporate capacity and Ditmars, Jr. Camden Trust Company sought to recover judgment for the amount due it on three promissory notes of Ditmars, Jr. These notes (two executed in September 1933 and the third in September 1935) were drawn in the total principal amount of $37,326.53. On

April 23, 1941, when Camden Trust Company instituted suit, Ditmars, Jr. owed thereon $26,232.68. Ditmars, Jr. claimed that by virtue of alleged usury all interest on these indebtednesses was forfeited, and that the amounts of interest paid should be credited on account of principal. The total amount of interest charted during the years in question was $21,330.31. There were four bases for claims of usury asserted by Ditmars, Jr. One was asserted discrepancy of principal of $250. This claim was withdrawn by counsel at the trial. The second was an alleged duplicate charge of $105 against interest in the trustee's book accounts for the month of April, 1936, and the third was an alleged overcharge of interest, covering a period of several years, in the total amount of $296.39. The fourth claim was asserted by Ditmars, Jr. on motion for relief from judgment, filed February 1, 1952, based on allegedly newly discovered evidence of a discrepancy in an income reserve account consisting of income accumulated to July 1, 1941. This motion was denied by the trial court on February 15, 1952, and it appears properly so. The record shows that Ditmars, Jr. received periodic statements showing this reserve but never questioned it until June 28, 1951, and took no action to preserve his alleged rights until November 17, 1951, which was after the entry of final judgment on September 20, 1951 and after he had filed (November 2, 1951) his notice of appeal from said final judgment. *Rule* 3:60–2 permits relief from judgment on newly discovered evidence only where made within a reasonable time and where such evidence "would probably alter the judgment" and "by due diligence could not have been discovered in time to move for a new trial. * * *" It is obvious that Ditmars, Jr., "by due diligence" during these long drawn-out proceedings, could have discovered the asserted "new evidence" at any time prior to the time the trial court's conclusions were made known, and further, that he did not move within a reasonable time.

Ditmars, Jr. contended that there was a deduction from the income of the trust in April 1936, of an item of

$105 for payment of interest on a mortgage at two different times. There was evidence that this was an error and was promptly corrected. Although plaintiff attacked the credibility of this evidence, he introduced no contradictory evidence. He claims that this error was not corrected and that it resulted in usury because $105 should have been credited to the principal of his indebtedness. We are of the opinion that the weight of the evidence does not support his claim.

The principal ground upon which Ditmars, Jr. asserts his claim of usury is that the defendant customarily computed interest by using tables based upon a 360-day year instead of a 365-day year during the period from the time these indebtednesses were incurred by him to April 1, 1941, and no credit was allowed him when the defendant changed its banking practices in this respect until October 14, 1941. The admitted amount of the overcharge was $296.39. Ditmars, Jr. contends in his briefs that we should modify the judgment of the court below to allow him repayment of alleged illegal interest now asserted to have been received by defendant between March 31, 1940 and April 1, 1941. Ditmars, Jr. asserted in his complaint that the total overcharge to March 31, 1941 was $296.39. The record does not show that he asserted otherwise at the trial. No recovery may be had on this item.

One of the pertinent statutes is *R. S.* 31:1–1, which reads as follows:

"Except as otherwise provided by law, no person shall, upon contract, take, directly or indirectly, for loan of any money, wares, merchandise, goods and chattels, above the value of six dollars for the forbearance of one hundred dollars for a year, and after that rate for a greater or less sum or for longer or shorter time."

The other pertinent statutes are *R. S.* 31:1–3 (providing for forfeiture of interest in lender's action, and deduction of illegal interest actually paid from the amount due), and *R. S.* 31:1–4 (borrower's action to require lender to accept principal without interest). The latter two statutes are

asserted by Ditmars, Jr. to require a forfeiture of all interest where usury exists. We find it unnecessary to determine this question of construction, and rest our decision upon other principles hereinafter expressed.

There is authority elsewhere that a bargain is not usurious because of the payment or promise of payment of interest calculated at the highest permissible rate on the assumption that there are only 360 days in the year. *Restatement of the Law, Contracts* (1932), *sec.* 534 (*c*), *p.* 1036. This is generally accepted rule based upon custom and convenience, although there are some decisions to the contrary. 6 *Williston on Contracts* (*rev. ed.* 1938), *sec.* 1695, *p.* 4799; 55 *Am. Jur., Usury, sec.* 40, *p.* 353; 66 *C. J., Usury, sec.* 146, *p.* 219. In *Patton v. LaFayette Bank,* 124 *Ga.* 965, 53 *S. E.* 664, 5 *L. R. A.* (*N. S.*) 592, 595 (*Sup. Ct.* 1906), the subject is discussed at length, with a comparison of the opposing views. The Georgia Supreme Court determined that the majority of decisions of courts of last resort in other states held that computation of interest on the 360-day year basis "is not usurious, provided this principle is resorted to in good faith as furnishing an easy and practicable mode of computation, and not as a cover for usury." *Cf. Merchants', etc., Bank v. Sarratt,* 77 *S. C.* 141, 57 *S. E.* 621, 122 *Am. St. Rep.* 562, 564–566 (*Sup. Ct.* 1907).

In this State we have no dispositive decision. In *Sussex Bank v. Baldwin and Shipman,* 17 *N. J. L.* 487, 496 (*Sup. Ct.* 1840), the majority of the former Supreme Court, although apparently critical of the practice, held that "The mode of calculation adopted, might certainly have presented a serious question for the court * * *," but did not determine whether the 360-day year calculation was opposed to the usury and interest statutes, and rested its decision on the ground that if this were so, mistake was a valid defense. Thus the specific question appears to remain open here.

We are of the opinion that the calculation of interest at the maximum statutory rate upon a 360-day

498

year is illegal, and that excess interest received in that manner should be repaid. Whether the practice could attain the force of law by long usage is doubtful in the absence of some indication of legislative recognition such as existed in *Columbia National Life Ins. Co. v. Withers,* 121 *N. J. L.* 54, 56–57 (*E. & A.* 1938), and we find no convincing evidence in the record of this case of such a long usage in general throughout this State, although there is evidence that it long existed as a practice of the defendant. However, the burden of proof of the corrupt bargain (beyond a reasonable doubt) is upon the one who asserts the claim of usury, *Stein v. Wittmer,* 117 *N. J. Eq.* 535, 540 (*E. & A.* 1934). If neither party intend it, and act *bona fide* and innocently, the law will not infer a corrupt agreement. *Durant v. Banta,* 27 *N. J. L.* 624, 632–633 (*E. & A.* 1858). Thus where, as in this case, the illegal interest is received by mistake or a miscalculation made in good faith, and not by intent to evade the usury laws, the transaction itself is not usurious and forfeiture of legal interest does not follow although the illegal interest received must be repaid. See 6 *Williston on Contracts* (*rev. ed.* 1938), *sec.* 1698. This is even more evident in equity, for there relief will only be granted the borrower on condition that he do equity "by repaying to his creditor what is justly and in good faith due, that is, the amount actually advanced, with lawful interest." 2 *Pomeroy's Equity Jurisprudence* (*5th ed.* 1941), *sec.* 391, *p.* 68; 55 *Am. Jur., Usury, sec.* 108, *pp.* 399–400.

 *The Statute of Limitation.* We find no merit in the contention of the plaintiff Ditmars, Jr. that certain of the notes in question are barred by *R. S.* 2 :24–1. The trial court correctly held that payments of income by the defendant trustee on Ditmars, Jr.'s account to itself in its individual corporate capacity by virtue of his express written authorizations are sufficient to arrest the running of the statute under the principles expressed in *Ballantine & Sons v. Macken,* 94 *N. J. L.* 502 (*E. & A.* 1920).

## CORPUS COMMISSIONS

The plaintiffs contend that the trial court erred in allowing defendant trustee *corpus* commissions. We find no error here. The allowance is discretionary with the trial court, *In re Koretzky*, 8 *N. J.* 506, 535–536 (1951), and under the circumstances of this case we discover no abuse of that discretion.

## COSTS AND COUNSEL FEES.

a. *Allowance to special master.*

In view of the intricate and involved circumstances of this case we are unable to agree with the plaintiffs that the allowance to the special master was excessive.

b. *Costs and Counsel fees.*

One or more of the plaintiffs object to each of the several allowances of costs and counsel fees made by the trial court and included in the final judgment, and have appealed therefrom in that respect.

With respect to allowances for costs and counsel fees for the plaintiffs and the defendants, it is settled that only so much of their costs and fees for services as were incurred in that portion of the litigation, and administration of the trust, may be compensated by charges against trust *corpus*. *Dickerson v. Camden Trust Company*, 1 *N. J.* 459, 468–469 (1949). Consideration of the record impels us therefore to set aside the allowances to counsel for Ditmars, Jr. (for services rendered both to him and to the other plaintiffs) and to counsel for the defendant, for we are unable to determine the extent to which services and costs relative only to the contest between Ditmars, Jr. and the defendant in its individual corporate capacity infected these allowances. This necessarily entails a re-examination of the amounts of these allowances on the issues of excessiveness. As to the allowances to counsel for Mrs. Reed and Mrs. Wolford, the sole

question appears to be whether the same were excessive. We believe they were and on the remand of this case should be reviewed and redetermined.

The judgment of the Superior Court, Chancery Division, and the order of said court denying plaintiffs' motion for relief from judgment and motion for construction of the testator's will are affirmed except for the matter of allowances of costs and counsel fees as above indicated. The cause will be remanded to the Superior Court, Chancery Division, for further proceedings including redetermination of such allowances, not inconsistent with this opinion.

*For modification*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*Opposed*—None.