THC FINANCIAL CORP., a Hawaii corporation, Plaintiff-Appellee, *v.* MANAGED INVESTMENT CORPORATION, a Hawaii corporation, DURREL L. ROBISON, JEANNE B. ROBISON, Defendants-Appellants, *v.* JOHN DOES 1-50, DOE ENTITIES 1-50, and DOE GOVERNMENTAL UNITS 1-50, Defendants

NO. 7214

CIVIL NO. 4258

APRIL 15, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ., AND RETIRED JUSTICES OGATA AND MENOR ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY LUM, J.

In this case, we need to determine whether the usury laws of Hawaii were violated in regard to three loan agreements between plaintiff-appellee THC Financial Corporation and defendants-appellants Managed Investment Corporation, Durrel L. Robison and Jeanne B. Robison.

Plaintiff filed a complaint in the circuit court for collection of principal and interest due on these promissory notes[1] and for the

---

[1] The notes provided the following language for payment of interest: "at the simple interest rate of 18% per annum," "at the rate of eighteen per cent (18%) per annum" and "at the rate of eighteen per cent (18%) per annum."

foreclosure of the real estate securing these notes. The court later found the notes to be in default, and entered its findings of fact and conclusions of law in which the court determined the amounts owed by the defendants and decreed that the property be sold.

The trial court's findings left no doubt that the 365/360 method[2] was used to calculate the amount of interest the principal amounts accrued each day.[3] The court found that the amount of interest owed was \$61,116.21 and that the principal sums continued to accrue interest in the aggregate sum of \$60.00 per day. After the mortgaged property was sold, a dispute arose concerning the interest amount legally owing.

---

[2] There are three methods used in computing interest which are as follows:

(1) 365/365: The annual interest rate is divided by 365 and the resulting daily rate is multiplied by the number of days in the payment period.

(2) 360/360: The annual interest rate is divided by 360, and each month is treated as having 30 days. Interest for each month is the same, and for a calendar year the interest is the same as that calculated by using the 365/365 method.

(3) 365/360: The annual interest rate is divided by 360 to get a daily interest rate. This rate is then multiplied by the number of days in the payment period. Thus for a calendar year of 365 days, this method produces 5/360ths more interest than the other two methods.

Note, 6 Tol. L. Rev. 541, 541-42 (1975); Comment, 40 U. Chi. L. Rev. 141, 141-42 (1972).

[3] The court found that the principal sum of \$75,000.00 accrued \$37.50 of interest per day, the principal sum of \$25,000.00 accrued \$12.50 of interest per day, and the principal sum of \$20,000.00 accrued \$10.00 of interest per day. These daily rates are consistent with an affidavit dated September 10, 1976 of a vice president of plaintiff. The application of these daily rates to a calendar year of 365 days produces an annual interest rate equal to 18.25 percent of the principal amounts, and thus the daily rates are equal to the amounts that would be computed if the 365/365 method were used.

(1) Loan Number 1:
Annual Interest Rate = \$75,000 × .18 = \$13,500
Daily Interest Rate = \$13,500 ÷ 360 = \$37.50
Annual Percentage Rate = 365 × \$37.50 ÷ \$75,000 = .1825

(2) Loan Number 2:
Annual Interest Rate = \$25,000 × .18 = \$4,500
Daily Interest Rate = \$4,500 ÷ 360 = \$12.50
Annual Percentage Rate = 365 × \$12.50 ÷ \$25,000 = .1825

(3) Loan Number 3:
Annual Interest Rate = \$20,000 × .18 = \$3,600
Daily Interest Rate = \$3,600 ÷ 360 = \$10
Annual Percentage Rate = 365 × \$10 ÷ \$20,000 = .1825

Defendants denied liability for interest, relying on HRS § 408-16, and counterclaimed for refund on account of usurious interest. Plaintiff filed a motion for summary judgment. The motion was granted and the counterclaim dismissed. Judgment was entered in favor of plaintiff in the sum of $85,950.73; the amount representing interest due was within the maximum annual interest rate. Defendants brought this appeal. We affirm.

Defendants contend that plaintiff exceeded the interest limitations of HRS § 408-15[4] (1976 & Supp. 1981) when it computed interest by means of the 365/360 method. Since plaintiff's use of the 365/360 method results in an annual interest charge of 18.25 percent and the 365/365 and 360/360 methods would result in an annual interest charge of 18.0 percent,[5] defendants assert that the sanction of HRS § 408-16[6] (1976) applies.

---

[4] § 408-15 (1976) *Interest rates; other charges; refunds.* (a) No industrial loan company shall directly or indirectly charge, contract for, collect, or receive any interest, discount, fees, charges, or other consideration on any loan made by it except as provided by this section.

. . . .

(h) Other charges. In addition to the interest, discount, or other charges permitted by this section, an industrial loan company shall also have power to collect in advance or otherwise from the borrower any of the following charges:

. . . .

(6) Loan fees or "points" on all loans primarily secured by an interest in real property where the interest rate is computed in accordance with subsection (j) of this section; provided, that the total finance charge payable by the borrower in connection with any such loan shall all include the amount of any such loan fees or "points" and shall not exceed an annual percentage rate (as defined in the Federal Truth In Lending Act and the regulations of the Federal Reserve Board promulgated thereunder) of eighteen per cent per annum.

. . . .

(j) As an alternative to the interest authorized by subsection (b), an industrial loan company may contract for and receive interest at a rate not exceeding one and one-half per cent per month on the unpaid principal balance of a loan, for a loan period of no longer than six years.

[5] The maximum interest rate under HRS § 408-15(j) of one and one-half percent per month is equivalent to 18 percent per annum.

[6] § 408-16 (1975) *Other interest provisions inapplicable; effect of excessive interest.* Sections 478-4 and 478-6 shall not apply to industrial loan companies.

If a greater rate of interest than that permitted by this chapter is contracted for in any contract within the purview of this chapter, the contract shall not, by reason thereof, be void. But if, in any action on the contract, proof is made that a greater rate

The 365/360 method of computing interest has been a standard method of the banking industry for the past two centuries. The majority of early cases refused to hold that interest resulting from the use of the 365/360 method at the maximum legal rates is usurious. These cases held that computational convenience and banking custom justified the use of the 365/360 method. *See* cases cited in Comment, *supra* at 145-50. But interest is now calculated by computers, and the rationale of the earlier cases is no longer persuasive to all courts. In *American Timber & Trading Co. v. First National Bank of Oregon*, 511 F.2d 980 (9th Cir. 1974), *cert. denied*, 421 U.S. 921 (1975), the United States Court of Appeals for the Ninth Circuit, applying Oregon law, found that the bank's use of the 365/360 method of computation was usurious and agreed with the district judge's determination that the usury statute "should be construed with regard to its net effect upon the borrower rather than upon the bookkeeping burden, custom, or convenience of the lender." *Id.* at 983. *American Timber* has been followed by most courts who have subsequently considered this issue. *See Cagle v. Boyle Mortgage Company*, 261 Ark. 437, 549 S.W.2d 474 (1977); *Ellis National Bank of Tallahassee v. Davis*, 359 So.2d 466, 468-69 (Fla. App. 1978); *cert. denied*, 365 So.2d 711 (Fla. 1978), *cert. denied*, 440 U.S. 976 (1978); *Cochran v. American Savings & Loan Ass'n*, 568 S.W.2d 672 (Tex. Civ. App. 1978), *modified* 586 S.W.2d 849 (1979); *O'Brien v. Shearson Hayden Stone, Inc.*, 90 Wash.2d·680, 586 P.2d 830, 836 (1978). *But see Martin v. Moore*, 269 Ark. 375, 601 S.W.2d 838, 839 (1980); *Beazley v. Georgia Railroad Bank & Trust Co.*, 144 Ga. App. 215, 241 S.E.2d 39, 40 (1977).

Although we agree with the reasoning of *American Timber* and its progeny, we do not find it dispositive of the instant case. We must determine whether, in light of *American Timber's* reasoning, the sanc-

of interest than that permitted by this chapter has been directly or indirectly contracted for, the plaintiff shall only recover upon the contract the amount actually received by the borrower on the contract in cash, credit, or the equivalent thereof, or any combination of cash, credit, or the equivalent thereof, or any combination of cash, credit, or the equivalent, plus the charges (if any) which were actually incurred by the company and properly charged to the borrower under terms (1) to (3), of section 408-15(h), and which have not been deducted from the principal amount of the contract or otherwise paid by the borrower; and, if interest has been paid, judgment shall be for the aforesaid recoverable amount less the amount of interest so paid; and the defendant shall recover his costs.

tion provided by HRS § 408-16 is available to defendants.

HRS § 408-15(j) permits an industrial loan company to "contract for and receive" interest at a rate not exceeding one and one-half percent per month on the unpaid balance of a loan.

HRS Chapter 408 provides two sanctions where an industrial loan company violates the limitations on interest rates set by HRS § 408-15. One sanction is established by HRS § 408-29 (1976) which mandates a fine for any willful and knowing violation of any provision of the chapter. The other sanction is contained in HRS § 408-16 which provides:

> [I]f, in any action on the contract, proof is made that a greater rate of interest than that permitted by this chapter has been directly or indirectly contracted for, the plaintiff shall only recover upon the contract the amount actually received by the borrower on the contract . . . .

The legislature has defined usury in different ways, and these definitions indicate the legislature's intent to draw distinctions between "charging" excessive interest, "receiving" excessive interest, and "contracting for" excessive interest.[7] Since HRS § 408-16 is

---

[7] § 478-4 (1976) *Usury not recoverable.* If a greater rate of interest than one per cent a month is contracted for, the contract shall not by reason thereof, be void. But if in any action on the contract proof is made that a greater rate of interest than one per cent a month has been directly or indirectly *contracted for,* the plaintiff shall only recover the principal and the defendant shall recover costs; provided, that any bank may charge, contract for, receive, collect in advance, or recover interest, discount, and other charges at the same rates and in the same amounts as permitted by law in the case of loans made by industrial loan companies licensed under chapter 408, if in relation to the contract such bank shall be in compliance with sections 408-15 and 408-17 applicable to licensees under chapter 408. If interest has been paid, judgment shall be for the principal less the amount of interest paid. This section shall not be held to apply to contracts for money lent upon bottomry bonds or upon other maritime risks nor to loans made under chapter 408. (Emphasis added.)

§ 478-6 (1976) *Usury; penalty.* Except as otherwise permitted by law, any person who directly or indirectly *receives* any interest, discount, or consideration for or upon the loan or forbearance to enforce the payment of money, goods, or things in action, at a rate greater than one per cent a month or who, by any method or device whatsoever, *receives* or arranges for the receipt of interest, increase, or profit at a greater rate than one per cent a month on any loan made by him shall be guilty of usury and shall be find not more than $250, or imprisoned not more than one year, or both. The rate of one per cent a month shall cover all commissions, fees, charges, interest, increase, and profit of every character whatsoever. (Emphasis added.)

*See supra* footnotes 4 and 6 (HRS §§ 408-15(a), 408-15(j), and 408-16).

phrased in terms of "contracting for" excessive interest, it imposes a sanction only where a greater rate of interest than permitted has been directly or indirectly contracted for. Thus, merely charging or receiving excessive interest is not sufficient to make HRS § 408-16 applicable.

The necessity of a contract for excessive interest was recognized in *Paulat v. Pirello*, 353 So.2d 1307 (La. 1977), in which the usury statute, La. Rev. Stat. Ann. § 9:3501 (West), provided, "[a]ny contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted." The lender brought suit on notes, and the borrower asserted the defense of usury. Since the notes bore interest at the maximum rate of 8 percent per annum, they were not usurious on their face. But the court observed:

> By mutual agreement of the two parties following maturity of the notes, payments of interest were made and received at the rate of 18% per annum. These payments were thus made and received by virtue of the contract or agreement, express or implied, entered into by the parties after maturity of the notes that interest would be paid in that manner and at that rate. Articles 1797 et seq.
>
> Since the interest payments so made by virtue of agreement(s) are usurious, the "entire interest so contracted" by the borrower is forfeited by the lender. La. R. S. 9:3501.

*Id.* at 1310. *Also see Forte v. Nolfi,* 25 Cal. App.3d 656, 102 Cal. Rptr. 455 (1972).

In the present case, the three promissory notes provide that defendant Managed agreed to pay interest at the rate of 18 percent per annum. Thus, a rate of interest greater than the lawful rate has not been directly contracted for.

Defendants argue that the 365/360 method is a way of indirectly contracting for more than the lawful rate of interest. They rely on *American Timber & Trading Co. v. First National Bank of Oregon, supra,* where the court found that it was implicit in the agreement that the bank would calculate interest by means of the 365/360 method. However, in *American Timber* the court's finding was based on the fact that the 365/360 method was the bank's customary basis of computing interest charged to individual and corporate borrowers. In the instant case, the record on appeal contains no evidence that

the 365/360 method was the defendant's customary basis of computing interest charged to borrowers.[8] Consequently, the use of the 365/360 method cannot be implied in this agreement.

Since the record reveals no agreement, express or implied, that interest would be computed by means of the 365/360 method, a greater rate of interest than 18 percent per annum has not been directly or indirectly contracted for. We conclude that the sanction of HRS § 408-16 does not apply.[9]

Defendants rely upon *American Timber & Trading Co. v. First National Bank of Oregon, supra; Cagle v. Boyle Mortgage Company, supra; Ellis National Bank of Tallahassee v. Davis, supra; Ditmars v. Camden Trust Co.,* 10 N.J. 471, 92 A.2d 12 (1952); and *Cochran v. American Savings & Loan Ass'n, supra.* These cases are inapplicable to our analysis of HRS § 408-16 because the relevant statutes vary significantly from HRS § 408-16. The statutes expressly provided that the exacting, receiving, or taking of a greater rate of interest than allowed made the sanctions available.[10] Since the mere exacting,

---

[8] National surveys indicate that the use of the 365/360 method is not a definite uniform practice. The results of a Federal Reserve Board survey were summarized by Congressman Patman as follows:

This practice [use of the 365/360 method] is not standard or uniform in any way. It varies among banks with respect to the types of loans or maturities of loans subjected to the practice. It varies even in many instances within the same bank with respect to the type of loans to which the practice is applied. And it varies significantly from one part of the country to another. 117 Cong. Rec. 18539 (1971).

[9] Under this ruling, any customary practice in the use of the 365/360 method in computing interest payments is not being condoned.

[10] The court in *American Timber,* citing Or. Rev. Stat. § 82.120(2), stated that the exacting of a greater rate of interest than permitted is sufficient to constitute usury. *American Timber & Trading Co. v. First National Bank of Oregon, supra* at 983.

The statute in *Cagle* provided:

All bonds, bills, notes, assurances, conveyances, and all other contracts or securities whatever, whereupon or whereby there shall be reserved, *taken* or *secured,* or agreed to be taken or reserved, any greater sum, or greater value for the loan or forbearance of any money, goods, things in action, or any other valuable thing than is prescribed in this act [§§ 68-602, 68-604, 68-608], shall be void. (Emphasis added.)

Ark. Stat. Ann. § 68-608.

The statute in *Ellis* provided:

Any person, or any agent, officer or other representative of any person, willfully violating the provisions of § 687-03 shall forfeit the entire interest so

receiving, or taking of a greater rate of interest than allowed is not sufficient to make HRS § 408-16 applicable, these cases are inapposite.[11]

For the reasons stated above, we conclude that no genuine issue of material fact exists and plaintiff was entitled to summary judgment as a matter of law.

Affirmed.

---

charged, or contracted to be charged or reserved, and only the actual principal sum of such usurious contract can be enforced in any court in this state, either at law or in equity; and when said usurious interest is *taken* or reserved, or has been paid, then and in that event the person, who has taken or reserved, or has been paid, either directly or indirectly, such usurious interest, shall forfeit to the party from whom such usurious interest has been reserved, taken or exacted in any way, double the amount of interest so reserved, taken or exacted; . . . . (Emphasis added.)

Fla. Stat. Ann. § 687-04 (West).

The court in *Ditmars* stated that the pertinent statute, N.J. Stat. Ann. § 31:1-3, provided for forfeiture of interest in lender's action, and deduction of illegal interest actually *paid* from the amount due. *Ditmars v. Camden Trust Co., supra,* 92 A.2d at 25. (Emphasis added.)

The statute in *Cochran* provided:

1.06(1)  Any person who contracts for, charges or *receives* interest which is greater than the amount authorized . . . shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error. (Emphasis added.)

Tex. Stat. Ann. art. 5069-1.06(1) (Vernon).

[11] Appellants also cite *Perlman v. First National Bank of Chicago,* 15 Ill. App.3d 784, 305 N.E.2d 236 (1973). Although this case involved the 365/360 method, there was no claim of usury raised.

*O'Brien v. Shearson Hayden Stone, Inc., supra,* is inapposite for the same reason as *American Timber.* The statute provided:

19.52.020 *Highest rate permissible – Setup charges.*  Any rate of interest not exceeding twelve percent per annum agreed to in writing by the parties to the contract shall be legal, and no person shall directly or indirectly *take or receive* in money, goods, or things in action, or in any other way, any greater interest, sum or value for the loan or forbearance of any money, goods or things in action than twelve percent per annum: *Provided,* That in any loan of money in which the funds advanced do not exceed the sum of five hundred dollars, a setup charge may be charged and collected by the lender, and such setup charge shall not be considered interest hereunder: *Provided further,* That such setup charge does not exceed four percent of the amount of funds advanced, or fifteen dollars, whichever is the lesser, except that on loans of under one hundred dollars a minimum not exceeding four dollars may be so charged. (Emphasis added.)

Wash. Rev. Code Ann. § 19.52.020.

*Tobias C. Tolzmann* for defendants-appellants.

*James N. Duca (Vernon Woo* with him on the brief) for plaintiff-appellee.