H. Roger LAWLER, as Trustee for the Lawler Family Trusts, Petitioner,

v.

LOMAS & NETTLETON MORTGAGE INVESTORS, et al., Respondents.

No. C–3682.

Supreme Court of Texas.

June 5, 1985.

Rehearing Denied July 10, 1985.

Douglas R. Hudman, Fort Worth, for petitioner.

Locke, Purnell, Boren, Laney and Neely, Larry M. Lesh, Dallas, for respondent.

McGEE, Justice.

This is a usury case. The Lawler Family Trusts and the Lawler Corporation sued Lomas & Nettleton Mortgage Investors and Lomas & Nettleton Financial Corporation, alleging that various loans (607, 1126 and 1667) were usurious. The trial court rendered judgment that Lomas & Nettleton Financial charged the Lawler Family Trusts usurious interest on part of loan 607; however, it was also found that part of loan 607, charged to the Lawler Corporation, and loans 1126 and 1667 were not usurious. The court of appeals reversed the judgment of the trial court regarding loans 607 and 1126. 679 S.W.2d 671. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

### Loan 607

On March 21, 1972 the Lawler Family Trusts d/b/a Lawler Investment Company, William Robert Lawler, Jr., Trustee, executed a promissory note payable to the order of Lomas & Nettleton Financial. The note provided for a principal amount of $400,000.00 with interest at 10 percent per annum and a maturity date of March 1, 1975. On May 1, 1973, the Lawler Corporation was chartered. Thereafter, the Lawler Corporation executed a promissory note dated January 20, 1975 payable to Lomas & Nettleton Financial for the principal amount of $479,500.00. The note provided for a maturity date of January 20, 1976 and for monthly interest payments of 5 percent over the prime rate starting March 1, 1975; however, a subsequent modification agreement reduced the interest rate to 10 percent per annum. The note further permitted an interest rate of 18 percent per annum in the event of default on principal or interest payments.

From April 1972 to March 1976, Lomas & Nettleton Financial submitted monthly interest statements on loan 607 to "Lawler Investment Co." Although the statements recited a 10 percent interest rate, a per diem calculation was assessed on the basis of a 360-day year. In total, $118,711.52 was charged from April 1, 1972 through February 28, 1975; $27,082.21 from March 1, 1975 through September 30, 1975; and $28,262.55 from October 1, 1975 through April 30, 1976.

The issue presented is: Does loan 607 involve two separate obligations, and if so, is the original note usurious? The case was submitted to the trial court on an agreed statement of facts pursuant to Tex. R.Civ.P. 263. The trial court rendered judgment that the original debt, from March 21, 1972 through March 1, 1975, was usurious because interest was charged to a non-corporate entity at a rate higher than 10 percent per annum. The trial court found the remaining obligation on loan 607 from March 1, 1975 through April 30, 1976 was not a usurious loan because it was made to the corporate borrower, the Lawler Corporation, and the interest rate did not exceed one and one-half percent per month. The court of appeals determined that the promissory note executed by the Lawler Corporation was not a new transaction but a continuation of the original indebtedness. The court of appeals cited *Schwab v. Schlumberger Well Surveying*

*Corp.*, 145 Tex. 379, 384, 198 S.W.2d 79, 82 (1946) for the general proposition "that the giving of a new note for a debt evidenced by a former note does not extinguish the original indebtedness unless such is the intention of the parties." It was reasoned that no such intention was apparent because the agreed statement of facts recited that the promissory note executed by the Lawler Corporation was "in the principal amount of $479,550.00, representing the principal and accrued and unpaid interest on the March 21, 1972, promissory note executed by the Lawler Trust."

■ An appellate court, in reviewing a case tried upon an agreed statement of facts, is not permitted to draw any inference or find any fact not embraced in the agreement unless as a matter of law such further inference or fact is necessarily compelled by the agreed upon evidentiary facts. *Bowman v. Simpson*, 546 S.W.2d 99, 100 (Tex.Civ.App.—Beaumont 1977, writ ref'd). The various documents evidencing loan 607 are mentioned in and attached to the agreed statement of facts. All these documents constituting the loan transaction must be interpreted together. *Nevels v. Harris*, 129 Tex. 190, 195, 102 S.W.2d 1046, 1048 (1937).

■ Although the agreed facts mention that the promissory note executed by the Lawler Corporation was for a sum of money "representing the principal and accrued and unpaid interest" on the original 607 loan, this recitation does not prevent a decision that the second note began a new loan transaction. In particular, the *Schwab* case also makes it clear that the execution of a renewal note "is generally treated as a new contract." 198 S.W.2d at 82; *see*

*Priest v. First Mortgage Co. of Tex.*, 659 S.W.2d 869, 871 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). The focus of the court of appeals on whether intent to extinguish the original indebtedness was present does not entirely resolve the issue of whether two separate obligations on loan 607 existed.

■ The promissory note executed by the Lawler Corporation differed from the original note executed by the Lawler Family Trusts. The original note provided for an interest rate of 10 percent per annum during periods of default, whereas the corporation's note provided for interest at 18 percent during default. The original note did not establish the method for calculation of interest; however, the second note sets the calculation at a daily rate of $1/360$ of the annual percentage. Also, the original note, but not the second, allowed for prepayment without penalty.

In addition, language in the second note referring to "payment" of the original indebtedness supports the conclusion that a new contract obligation existed. The deed of trust executed by the Lawler Corporation on the same day as the promissory note stated that the promissory note "is given in renewal" of the original 607 loan, that "the proceeds of the note hereby secured have been advanced ... to renew and pay" the outstanding balance due on loan 607 and further that the original $400,000.00 "promissory note and all other charges aforementioned thus paid and renewed are secured" by the deed of trust.[1]

Lomas & Nettleton Financial rely on a bankruptcy order declaring the Lawler Family Trusts, the Lawler Corporation and

---

1. The deed of trust specifically provides:
   The Note hereby secured is given in renewal of that certain Promissory Note dated March 21, 1972, in the original principal amount of $400,000.00 executed by The Lawler Family Trust d/b/a Lawler Investment Company, payable to the order of Beneficiary ... Grantors hereby acknowledge that proceeds of the Note hereby secured have been advanced by Beneficiary at Grantors' request to renew and pay (i) the aforementioned $400,000.00 Promissory Note which has an outstanding princi-

   pal balance of $430,616.80, (ii) accrued interest thereon in the amount of $6,479.25 ... and the $400,000.00 Promissory Note and all other charges aforementioned thus paid and renewed are secured by a valid and subsisting first deed of trust lien against the property described in this Deed of Trust, and the Beneficiary of this Deed of Trust is subrogated to all of the rights, liens, equities and remedies securing the indebtedness evidenced by the aforementioned $400,000.00 Promissory Note.

the Lawler Management Company were one and the same entity and all alter egos of H. Roger Lawler. It is argued, therefore, that only one loan transaction has occurred because the various promissory notes and documents evidencing loan 607 were executed by only "one" borrower. In *RepublicBank Dallas, N.A. v. Shook*, 653 S.W.2d 278, 282 (Tex.1983), a new loan was established after the noncorporate borrower on the original note incorporated himself and negotiated a renewal loan with corporate interest rates. The loan was not usurious even though all parties agreed and the jury found that Shook was the "true borrower." *Id.* at 279. Similarly, the present loan transaction involves an original loan made to a noncorporate entity and a later loan made to a corporation. The court of appeals erred in treating all the transactions as a single obligation.

The remaining issue pertaining to loan 607 is whether the original loan was usurious. Lomas & Nettleton Financial sent the Lawler Investment Company monthly statements reciting a 10 percent per annum rate of interest but calculated the per diem rate based on a 360-day year.[2] In other words, interest was charged at the rate of 10.139 per cent per annum. The relevant maximum legal rate of interest chargeable on loans to noncorporate entities was 10 percent per annum. Tex.Rev.Civ.Stat.Ann. art. 5069–1.02 (Vernon 1971).

One of the requisite elements of usury is "exaction of a greater compensation than allowed by law for the use of the money by the borrower." *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982). Furthermore, a lending institution's practice of charging a per diem rate of interest based on a 360-day year cannot be characterized as an "accidental or bona fide error." Tex. Rev.Civ.Stat.Ann. art. 5069–1.06 (Vernon Supp.1985). Accordingly, we hold that the original 607 loan obligation was usurious.

### Loan 1126

On May 3, 1973, the Lawler Corporation executed a promissory note payable to Mercantile Safe and Deposit Company of Baltimore, Maryland (Mercantile). The note provided for a principal amount of $2,200,-000.00 with interest at 8¼ percent per annum and a maturity date of May 3, 1975. In addition, the note provided for interest at the rate of 18 percent during default. Also, on May 3, 1973, by way of a letter agreement, the Lawler Corporation promised to pay a take-out commitment fee of $125,000.00 to Lomas & Nettleton Financial in consideration of their issuance of a commitment agreement to Mercantile to purchase the $2,200,000.00 loan at maturity. The letter agreement provided for a 10 percent per annum interest rate on unpaid principal once Lomas & Nettleton funded the note. Thereafter, according to take-out commitment, Lomas & Nettleton Financial purchased from Mercantile the note on May 21, 1975. In September of the same year, Lomas & Nettleton Financial and the Lawler Corporation executed a modification and extension agreement wherein the principal amount was increased to $2,230,-000.00, the maturity date extended to January 6, 1976 and the interest rate changed to 10 percent per annum. The agreement further provided that, except as then modified, the terms and conditions of the prior note executed by Lawler Corporation payable to Mercantile remained in full force and ef-

---

**2.** Three methods used in calculating interest have been described:

(1) ³⁶⁵/₃₆₅: The annual interest rate is divided by 365 and the resulting daily rate is multiplied by the number of days in the payment period.

(2) ³⁶⁰/₃₆₀: The annual interest rate is divided by 360, and each month is treated as having 30 days. Interest for each month is the same, and for a calendar year the interest is the same as that calculated by using the ²⁶⁵/₂₆₅ method.

(3) ³⁶⁵/₃₆₀: The annual interest rate is divided by 360 to get a daily interest rate. This rate is then multiplied by the number of days in the payment period. Thus for a calendar year of 365 days, this method produced ⁵/₃₆₀th more interest than the other two methods.

*THC Financial Corp. v. Managed Investment Corp.*, 64 Hawaii 491, 643 P.2d 549, 550 n. 2 (1982).

fect. From May 1975 to April 1976, Lomas & Nettleton submitted to Lawler Investment Company, attention Roger Lawler, monthly statements which recited an interest rate of 10 percent; however, the per diem calculations were based on a 360-day year. In total, Lomas & Nettleton charged $210,187.83 of interest at a rate of 10.139 percent per annum.

Tex.Rev.Civ.Stat.Ann. art. 1302–2.09 (Vernon 1980) provides in pertinent part:

Notwithstanding any other provisions of the law, corporations, domesticate or foreign, may agree to and stipulate for any rate of interest as such corporation may determine, but not to ex-exceed one and one-half percent (1½%) per month, on any bond, note debt, contract or other obligation of such corporation. . . ."

The trial court determined that loan 1126 was not usurious because it was a corporate loan and the interest rate did not exceed 1½ percent per month. The court of appeals reversed the judgment of the trial court reasoning that the Lawler Corporation did not agree to pay interest in excess of 10 percent per annum. The court of appeals refused to give effect to the provision in the note permitting an 18 percent interest rate during default because "there's no mention of default" in the agreed statement of facts. 679 S.W.2d at 678.

■ We do not agree with this strict reading of the agreed statement of facts. The exhibits attached to the agreed statement, and in particular, the "Modification and Extension Agreement" provides "the note is now in default." The "note" referred to was identified as the promissory note executed by Lawler Corporation in favor of Mercantile dated May 3, 1975 and the modifications were directed to the terms of that prior note. The modification and extension agreement further provided that, except as then modified, Lawler Corporation renewed the note and agreed to "comply with and perform each and every of the obligations, terms, agreements, covenants and conditions specified or contained in the note. . . ." The provisions of the promissory note and the subsequent modification and extension agreement control any inconsistent provision of the letter agreement. *Peavy-Moore Lumber Co. v. First National Bank of Beaumont*, 133 Tex. 467, 128 S.W.2d 1158, 1163 (Tex. Comm'n App.1939, opinion adopted).

■ Lawler Corporation admits that loan 1126 would not be usurious if the provision permitting interest at 18 percent during default is effective. Accordingly, we hold that the court of appeals erred in finding loan 1126 to be usurious.

The judgment of the court of appeals is reversed and the judgment of the trial court is affirmed.

SPEARS, J., files a concurring opinion.

SPEARS, Justice, concurring.

I concur with the majority's holding that usury was charged on Loan 607 to the Lawler Trusts. I disagree, however, to the extent this Court is once again approving of a clever device to evade usury laws. A lending institution's practice of encouraging non-corporate entities to incorporate so a higher rate of interest can be charged is a subterfuge to avoid usury penalties. *RepublicBank Dallas N.A. v. Shook*, 653 S.W.2d 278, 283 (Tex.1983) (Spears, J., dissenting); *see also Texas Commerce Bank—Arlington v. Goldring*, 665 S.W.2d 103, 104 (Tex.1984) (Spears, J., concurring). I suppose the next step will be for this Court to approve the current pernicious practice of many lenders to demand 50% of the equity or ownership of the business or project from the borrower before the loan will be made. I see little difference in this practice and extorting "protection" money.