



## OPINION

No. 04-11-00061-CV

Wilfredo **AMARO** d/b/a Amaro Collision Center & Towing, Eric Colon d/b/a Eagle Wrecker
Service, and Celestino Talamantez d/b/a TNT Towing,
Appellants

v.

**WILSON COUNTY**, Texas; Albert Gamez in his official capacity as Wilson County
Commissioner, Precinct 1; Leonard Rotter, Jr. in his official capacity as Wilson County
Commissioner, Precinct 2; Robert H. Lynn in his official capacity as Wilson County
Commissioner, Precinct 3; Larry A. Wiley in his official capacity as Wilson County
Commissioner, Precinct 4; Marvin Quinney in his official capacity as Wilson County Judge; and
Rick's Towing Services, Inc.,
Appellees

From the 218th Judicial District Court, Wilson County, Texas
Trial Court No. 10-05-0204-CVW
Honorable David Peeples, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:        Sandee Bryan Marion, Justice
                Phylis J. Speedlin, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  December 14, 2011

AFFIRMED

      Wilfredo Amaro d/b/a Amaro Collision Center & Towing, Eric Colon d/b/a Eagle

Wrecker Service, and Celestino Talamantez d/b/a TNT Towing (collectively, "Amaro") appeal a

take-nothing judgment rendered in favor of Wilson County and Rick's Towing Services, Inc.  On

appeal, Amaro challenges the County's decision to award a two-year contract to Rick's Towing to perform the County's incident management tows. Amaro chiefly argues that the contract is impermissibly exclusive. Amaro also complains of the award of attorney's fees to Rick's Towing. We affirm the judgment of the trial court.

## BACKGROUND

Because the dispute at issue is over a towing contract, we first look to Title 14 of the Texas Occupations Code, which pertains to the regulation of motor vehicles and transportation. Chapter 2308 ("the Texas Towing and Booting Act") defines the different types of tows. A consent tow is a tow in which a tow truck is summoned by the vehicle's owner or operator. TEX. OCC. CODE ANN. § 2308.002(3) (West Supp. 2011). A nonconsent tow is a tow that is not a consent tow. *Id*. § 2308.002(6). There are two types of nonconsent tows, including an incident management tow, which is when a tow truck is summoned because of a traffic accident, and a private property tow, which is the tow of a vehicle authorized by a parking facility owner without the consent of the vehicle's owner or operator. *Id*. § 2308.002(5-a), (8-a). The case before us concerns incident management tows.

Until May 2010, the County fielded requests for incident management tows through a rotation system. Under this system, the County Sheriff's Office dispatcher would direct calls from law enforcement for incident management tows to each towing company named on the official county towing rotation list in sequential order. This rotation system was approved in February 2005 and again in April 2008.

In 2009, after receiving many public complaints regarding excessive towing fees charged to vehicle owners, the County issued a request for proposals for the performance of nonconsent tows requested by the County Sheriff's Office dispatcher. The proposal—which could either be

for an exclusive contract or for participation in a rotation system—had to provide for fixed fees, and provide for a single telephone number, answered 24 hours a day, so that the dispatcher was no longer required to call a series of telephone numbers to locate a wrecker driver prepared to accept a nonconsent tow. Rick's Towing submitted a proposal, as did several of the plaintiffs. The Commissioners unanimously voted to award the contract to Rick's Towing, and on April 30, 2010, the County entered into an agreement with Rick's Towing, whereby Rick's Towing would perform the County's incident management tows from May 1, 2010 to April 30, 2012. In pertinent part, the agreement provides that:

> (6)(a) The County agrees that the Operator will have exclusive towing rights to all calls originated by an authorized representative of the [Wilson County Sheriff's Office] for a peace officer requested nonconsent tow, within the designated service area as described in Section 5.

The "designated service area as described in Section 5" is limited to:

> (5)(a) [A]ll unincorporated areas of Wilson County, and all incorporated areas of Wilson County not pre-empted by a municipal rule, regulation or contract for non-consent tows initiated by a peace officer.

Thereafter, Amaro and five other plaintiffs filed a petition for declaratory relief and for writ of mandamus against the County (including the County Commissioners and the County Judge) and Rick's Towing. Amaro principally alleged that the County's action in entering into an agreement with Rick's Towing was ultra vires and exceeded the County's constitutional and statutory authority. Rick's Towing filed a counterclaim seeking a declaratory judgment that Texas law does not expressly create an entitlement for access to, or presence on, a County rotational list. The parties proceeded to a bench trial on stipulated facts on October 13, 2010. After hearing argument, the trial court orally pronounced that "the County was within its authority when [it] granted the contract to Rick's Towing" and denied Amaro's petition for declaratory relief and mandamus. Rick's Towing subsequently filed a motion for attorney's fees

as a prevailing party under the Uniform Declaratory Judgments Act.  On December 20, 2010, the trial court rendered a take-nothing judgment against the plaintiffs and awarded attorney's fees to Rick's Towing in the amount of $5,817.  Both the plaintiffs and Wilson County were ordered to bear their own attorney's fees, and all parties were ordered to bear their own costs of court.  Amaro and two of the other plaintiffs timely appealed.

### STANDARD OF REVIEW

The standard of review in a case tried on agreed stipulated facts is de novo.  *See Panther Creek Ventures, Ltd. v. Collin Cent. Appraisal Dist.*, 234 S.W.3d 809, 811 (Tex. App.—Dallas 2007, pet denied).  The agreed stipulations are binding on the parties, the trial court, and the reviewing court.  *Id.*  We conclusively presume that the parties have brought before the court all facts necessary for the presentation and adjudication of the case.  *Cummins & Walker Oil Co. v. Smith*, 814 S.W.2d 884, 886 (Tex. App.—San Antonio 1991, no writ).  We do not review the legal or factual sufficiency of the evidence, but simply review the trial court's order to determine if it correctly applied the law to the agreed stipulated facts.  *See Karm v. City of Castroville*, 219 S.W.3d 61, 63 (Tex. App.—San Antonio 2006, no pet.) ("To the extent that the issues involved stipulated facts and only questions of law were presented to the trial court, this court reviews the trial court's decision de novo.").

### DISCUSSION

On appeal, Amaro raises three issues: (1) the contract awarded to Rick's Towing exceeds the County's authority under the Texas Constitution and state statutes because it mandates that (a) all nonconsent tows initiated through the dispatcher of the Wilson County Sheriff's Office shall be performed exclusively by Rick's Towing and (b) any and all persons subject to nonconsent tows initiated through the dispatcher of the Wilson County Sheriff's Office must

directly pay Rick's Towing; (2) assuming the County was authorized to make the contract, the contract fails to regulate rates for private property tows as required by section 2308.202 of the Texas Occupations Code; and (3) the trial court abused its discretion in awarding attorney's fees to Rick's Towing.

*(1)(a)  Was Wilson County Authorized to Make the Contract?*

Amaro first asserts that the County, as a creature of limited jurisdiction having no home rule authority, did not have the power under Texas law to make an exclusive two-year contract with Rick's Towing. Thus, we begin by examining the authority of the County's Commissioners Court.

In *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 27-28 (Tex. 2003), the Supreme Court stated that a commissioners court's primary function is to administer its county's business affairs. Counties and commissioners courts are created by the Texas Constitution and are subject to regulation by the Legislature. *Id*. at 28. "Thus, a commissioners court may exercise only those powers expressly given by either the Texas Constitution or the Legislature." *Id*. (citing *Canales v. Laughlin*, 147 Tex. 169, 214 S.W.2d 451, 453 (1948)). "When the Constitution or Legislature imposes an obligation on a commissioners court, that commissioners court also has the implied authority to exercise the power necessary to accomplish its assigned duty." *City of San Antonio*, 111 S.W.3d at 28 (citing *Anderson v. Wood*, 137 Tex. 201, 152 S.W.2d 1084, 1085 (1941)).

The *City of San Antonio* is instructive here not only because it defines the limited authority of commissioners courts, but also because it notes that the Legislature gave commissioners courts general control over county roads in 1876. *Id*. at 28-29. The Transportation Code specifically provides that commissioners courts "may exercise general

control over all roads, highways, and bridges in the county." TEX. TRANSP. CODE ANN. § 251.016 (West Supp. 2011). "By granting commissioners courts general control over the roads, the Legislature imposed on them a duty to make the roadways safe for public travel." *City of San Antonio*, 111 S.W.3d at 31-32 (construing statutory predecessor to section 251.016).

Thus, absent any showing to the contrary, the County was authorized to make a contract relating to its power to exercise general control over county roads. *See Guynes v. Galveston Cnty.*, 861 S.W.2d 861, 863 (Tex. 1993) ("As the administrative head of county government, a commissioners court . . . possesses broad implied powers to accomplish its legitimate directives. These powers include the authority to contract with experts when necessary . . .") (internal citations omitted); *Puente v. County of Uvalde*, No. 04-96-00673-CV, 1998 WL 337779, at *1 (Tex. App.—San Antonio June 24, 1998, no pet.) (mem. op.) (not designated for publication) ("Counties have the authority to contract in the same manner as private parties . . .") (quoting 35 DAVID B. BROOKS, TEXAS PRACTICE: COUNTY AND SPECIAL DISTRICT LAW § 5.13 (1989)). The County maintains that its agreement with Rick's Towing was a permissible contract because it was created for the proprietary reason of creating efficiencies for itself and because it relates to the County's duty to control the roads. The County principally relies on *Cardinal Towing & Auto Repair, Inc. v. City of Bedford, Tex.*, 180 F.3d 686 (5th Cir. 1999), and an Attorney General Opinion, 2005 WL 775297, Tex. Att'y Gen. Op. No. GA-0315 (2005), to show that local practices concerning nonconsent tows are merely contractual matters between local government and vendors.

In *Cardinal Towing*, the City of Bedford similarly abandoned a rotational towing system in favor of contracting with a single company to perform all nonconsent tows requested by city police. *Cardinal*, 180 F.3d at 689. The plaintiff challenged the new ordinance on the ground

that it was preempted under federal law. *Id*. at 690. The city argued that the ordinance was not a regulation, but rather an ordinary contracting decision of a proprietary nature and thus was outside the scope of 49 U.S.C. § 14501(c) preemption. *Id*. The trial court agreed, and the Fifth Circuit affirmed, holding that the ordinance was not a towing regulation because the city was merely creating efficiencies for itself by way of an ordinance that controlled the small arena of police-initiated nonconsent tows. *Id*.

The Attorney General opinion addressed whether a municipality that limits fees for police-initiated nonconsent tows must comply with a statute relating to towing fee studies which provided:

(a) The governing body of a political subdivision that regulates nonconsent tow fees shall establish procedures by which a towing company may request that a towing fee study be performed.

(b) The governing body of the political subdivision shall establish or amend the allowable fees for nonconsent tows at amounts that represent the fair value of the services of a towing company and are reasonably related to any financial or accounting information provided to the governing body.

*See* TEX. TRANSP. CODE ANN. § 643.204 (West Supp. 2004-05) (current version at TEX. OCC. CODE ANN. § 2308.203 (West Supp. 2011)). The opinion discusses an ordinance passed by the City of Victoria limiting the fee that could be charged for police-initiated nonconsent tows. *See* 2005 WL 775297, at *1. The Texas Towing and Storage Association considered the ordinance to be a regulation of nonconsent tow fees and complained that the city had not established procedures by which a towing company may request a towing fee study be performed in conformance with the above statute. *See id.* at *2. Relying on *Cardinal Towing*, the Attorney General determined that the city was not regulating nonconsent tow fees; instead, the ordinance was designed to create efficiencies for the city. *See id.* at *5; *see also Cardinal*, 180 F.3d at 691 (A state or municipality acting as a market participant "in a narrow and focused manner

consistent with the behavior of other market participants" is not regulating the towing market.). Further, the narrow scope of the ordinance—limited to police-initiated calls—controlled only a portion of the nonconsent tow market and defeated an inference that the ordinance's primary goal was to encourage a general policy rather than address a specific proprietary problem. 2005 WL 775297, at *4. Thus, the Attorney General concluded that the city was not impermissibly ignoring the towing fee studies statute. *Id*. at *5.

Although Amaro argues that the cases cited by the County are inapplicable because they involved (1) the application of federal law and (2) ordinances passed by home-rule municipalities, we disagree. Even as an entity of limited jurisdiction, the County is authorized to make contracts related to its statutory duty to control county roads. *See City of San Antonio*, 111 S.W.3d at 28-29. Just as the City of Bedford did in *Cardinal Towing*, the County has an interest in its own efficient procurement of services and in maintaining traffic flow after an accident. *See Cardinal Towing*, 180 F.3d at 693, 696. Amaro acknowledges that the rotation system contained deficiencies. By contracting with one provider, the County avoids having to make several calls to locate a ready tow truck. This efficiency means that disabled vehicles can be removed quickly when the County requests a tow truck. We conclude that the County's proprietary interest in creating efficiencies and the County's duty to control the county roads allows it to make a contract such as the one before us.

*(1)(b) Is the Contract an Impermissible Exclusive Towing Franchise?*

Next, Amaro asserts that the contract is an exclusive towing franchise that was the result of ultra vires action. Amaro contends that the contract, by its own terms, is exclusive. Further, the contract imposes financial burdens directly on non-contracting parties (because the owner of the towed vehicle will be responsible for paying Rick's Towing, not the County), which Amaro

alleges is the "essence of an exclusive franchise." Amaro stresses that by mandating non-contracting parties to pay fees for incident management tows exclusively and directly to Rick's Towing, "the contract loses its character as a simple County procurement contract . . . and becomes both a *regulation of rates* and the *grant of an exclusive franchise*."

The County responds that the contract does not amount to an exclusive franchise because there is no prohibition against a motorist—or a peace officer—requesting another towing company to perform the tow. The County points out that Amaro Towing advertises "you have the right to get your own wrecker service" on its flyer. By contrast, in cases involving an exclusive towing contract, vehicle owners are deprived of the opportunity to contact a towing company of their choice. *See, e.g., Andrada v. City of San Antonio*, 555 S.W.2d 488, 490 (Tex. Civ. App.—San Antonio 1977, writ dism'd). As to the issue of financial burdens on noncontracting parties, the County contends that it is inconsequential that a third party pays the bill for nonconsent tows. These circumstances are present in every nonconsent tow, because the third party is temporarily unable to contract on his or her own behalf (i.e., arrested or in an accident).

In *City of Crosbyton v. Texas-New Mexico Utilities Co.*, 157 S.W.2d 418 (Tex. Civ. App.—Amarillo 1941, writ ref'd w.o.m.), the court of appeals considered whether a contract obligating the City to purchase electricity from the utility company to operate the city water works pumps and to light the streets for a period of twenty years was impermissibly exclusive. *Id*. at 419-20. The trial court found in favor of the utility company, and the appellate court affirmed, holding that the contract did not amount to a monopoly because it was simply a purchase and sale of a certain quantity of energy which the city had the right to purchase and the utility company had the right to sell. *Id*. at 422. The court of appeals stated:

> While the contract is exclusive in respect to the power or energy necessary to operate the pumps in connection with the city's water works and also the electric current necessary to operate its street lights, yet, in our opinion, it is not of that exclusive or monopolistic nature that is inhibited by the constitution and statutes of this state. Appellant did not agree to purchase from appellee all of the electric current used by it and it is conceivable that electric current and energy may be used for many purposes other than to operate water pumps and supply lights for the streets. . . . The contract amounted to an agreement to purchase the quantity of electric current needed by the city for the specific and restricted purposes therein mentioned. . . .

*Id*. at 421-22.

Here, we similarly conclude that the contract between the County and Rick's Towing is not impermissibly monopolistic. Although the contract does specify that Rick's Towing has the exclusive towing rights to all calls originated by an authorized representative of the County's Sheriff's Office for a peace officer requested nonconsent tow, the contract does not forbid a motorist, or even a peace officer, from requesting another towing company to perform the tow. Further, the contract provides for a limited designated service area, and gives Rick's Towing no right to perform certain categories of nonconsent tows. As such, the contract is not impermissibly exclusive. *See id*.

As to the complaint regarding third-party payment, we note that *Cardinal Towing* has addressed the issue. The court noted that although the structure of the towing industry is "somewhat distorted" by the fact a third party pays the towing bill, it is still an ordinary market for services. *Cardinal Towing*, 180 F.3d at 697. The court held that the City's towing contract was of a proprietary nature, notwithstanding the fact that a third party pays for the service. *Id*. Thus, Amaro's first issue is overruled.

*(2)*	*Section 2308.202 of the Texas Occupations Code*

Next, Amaro argues that assuming the County was authorized to make the contract, the contract is void because the County failed to regulate rates for private property tows in

accordance with section 2308.202 of the Texas Occupations Code. *See* TEX. OCC. CODE ANN. § 2308.202 (West Supp. 2011). That statute provides:

> The governing body of a political subdivision may regulate the fees that may be charged or collected in connection with a nonconsent tow originating in the territory of the political subdivision if the private property tow fees:
> (1) are authorized by commission[1] rule; and
> (2) do not exceed the maximum amount authorized by commission rule.

*Id.* Amaro asserts that this statute conditions regulation of all nonconsent tows on regulation of private property tows. Because the County did not adopt any regulations over rates for private property tows, Amaro maintains the County failed to comply with the mandatory provisions of section 2308.202, and therefore the contract is ultra vires and must be declared void.

The County responds that the agreement between the County and Rick's Towing is not a regulation, but merely a contract, and therefore there is no violation of section 2308.202. We agree. As discussed, *supra*, the County was authorized to make the contract with Rick's Towing, in light of its statutory duty to control the roads within its jurisdiction. *See* TEX. TRANSP. CODE ANN. § 251.016. Because the contract at issue is not a regulation of towing fees, we cannot conclude that the County failed to comply with section 2308.202. Accordingly, Amaro's second issue is overruled.

### *(3) Attorney's Fees for Rick's Towing*

In his third and final issue, Amaro complains that the trial court abused its discretion in awarding attorney's fees to Rick's Towing because Rick's Towing pleaded for attorney's fees defensively. Amaro alleges that Rick's Towing's original answer did not ask for attorney's fees in the event that plaintiffs lost, but instead filed a counterclaim asking for attorney's fees upon the trial court's affirmative declaration that plaintiffs have no constitutionally protected property

---

[1] "Commission" means the Texas Commission of Licensing and Regulation. *See* TEX. OCC. CODE ANN. § 2308.002(2) (West Supp. 2011).

interest in the rotation system, a system that did not exist on the date of trial. Thus, Amaro contends that Rick's Towing's pleadings do not constitute a proper request for attorney's fees under the Uniform Declaratory Judgments Act (UDJA). Amaro additionally contends that the award of fees was not "equitable and just" as required by Section 37.009 because the contract was ultra vires and void. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008).

Section 37.009 of the Texas Civil Practice and Remedies Code addresses costs and fees under the UDJA. That section provides, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." *Id*. Whether to grant or to deny attorney's fees in a declaratory judgment action is a decision that is within the discretion of the trial court. The trial court's award of attorney's fees will not be reversed on appeal absent a clear showing that it abused that discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985). A trial court may, in its discretion, in a declaratory judgment action, award attorney's fees to the prevailing party, may decline to award attorney's fees to either party, or may award attorney's fees to the nonprevailing party, regardless of which party sought declaratory judgment. *See Ochoa v. Craig*, 262 S.W.3d 29, 33 (Tex. App.—Dallas 2008, pet. denied).

Because the award of attorney's fees under the UDJA is committed to the discretion of the trial court, we review the award under an abuse of discretion standard. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). The fees must be reasonable and necessary as well as equitable and just. *Id.* Whether the fees are reasonable and necessary are questions of fact, whereas whether the fees are equitable and just are questions of law. *Id.* A trial court abuses its discretion when it rules arbitrarily, unreasonably, or without regard to guiding legal principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997). It is also an abuse of discretion to rule

without supporting evidence that is factually sufficient. *Bocquet*, 972 S.W.2d at 21. Therefore, in reviewing an attorney fee award under the UDJA, we must determine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary or when the award was inequitable or unjust. *Id.*

Here, Rick's Towing filed a motion for attorney's fees after the bench trial concluded, but before the trial court rendered its final judgment. In the motion, Rick's Towing pleaded for attorney's fees on the basis that it was a prevailing party under the UDJA. Attached to the motion were the affidavits of counsel for Rick's Towing and billing records establishing the reasonableness and necessity of the fees and expenses incurred by Rick's Towing.

On this record, we cannot conclude that the trial court abused its discretion in awarding attorney's fees to Rick's Towing. Rick's Towing properly pleaded for attorney's fees under the UDJA. Further, the award was not inequitable and unjust—as Amaro argues—on the grounds that the contract was void and ultra vires; we have already concluded that the County was authorized to make the contract with Rick's Towing. Thus, we overrule Amaro's third issue.

The judgment of the trial court is affirmed.

Phylis J. Speedlin, Justice