

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00069-CV

**TARRANT COUNTY DEMOCRATIC PARTY**; Steve Maxwell, In His Official Capacity as Chair of the Tarrant County Democratic Party; Texas Democratic Party; and Gilberto Hinojosa, In His Official Capacity as Chair of the Texas Democratic Party;
Appellants

v.

John **STEEN**,[1] in his official capacity as Secretary of State of Texas,
Appellee

From the 345th District Court, Travis County, Texas
Trial Court No. D-1-GN-09-00172
The Honorable Amy Clark-Meachum, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Catherine Stone, Chief Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  February 19, 2014

AFFIRMED IN PART, REVERSED IN PART, AND RENDERED

This appeal involves reimbursement of attorney's fees and expenses in connection with an election contest under Election Code sections 173.001(a) and 173.086(a).  *See* TEX. ELECT. CODE. ANN. §§ 173.001(a), .086(a) (West 2010).

---

[1] Nandita Berry was sworn in as Texas Secretary of State on January 7, 2014.

The Tarrant County Democratic Party (TCDP), the Texas Democratic Party (TDP), and their respective chairs[2] sought reimbursement from the Texas Secretary of State for their attorney's fees incurred in defending an election contest lawsuit filed by Kim Brimer, a Republican candidate. Brimer's suit challenged Wendy Davis's eligibility to be the Democratic candidate for State Senate District 10. When the Secretary of State denied Appellants' attorney's fees reimbursement request, Appellants sued the Secretary of State[3] in Travis County district court. After a bench trial on an agreed statement of facts, the trial court rendered a take-nothing judgment against Appellants.

On appeal, we address four main issues: (1) whether the Secretary of State's sovereign immunity may be waived by Election Code section 173.086(a), (2) whether any statutory prerequisites to suit exist and were satisfied to invoke the waiver, (3) whether the *Brimer* suit fees were in connection with the primary election, and (4) whether Appellants are entitled to reimbursement of their attorney's fees.

We hold that Election Code section 173.086(a) waives the Secretary of State's sovereign immunity for a suit that complies with its requirements; the Election Code imposes certain statutory prerequisites which were either met or waived, and Appellants successfully invoked section 173.086(a)'s waiver; Appellants' *Brimer* suit fees were in connection with the primary election; and Appellants are entitled to reimbursement of their *Brimer* suit fees.

We reverse the portion of the trial court's judgment denying Appellants' reimbursement request for their *Brimer* suit attorney's fees, render judgment that the Secretary of State authorize Appellants' reimbursement and postjudgment interest, and affirm the remainder of the trial court's judgment.

---

[2] Gilberto Hinojosa succeeded Boyd L. Richie as chair of the Texas Democratic Party and was substituted as a party in this case. Stephen C. Maxwell has been chair of the Tarrant County Democratic Party since May 1, 2008.

[3] Hope Andradé, in her official capacity as Secretary of State, was the original defendant. She completed her term in December 2012; John Steen, who is the defendant in this case, became Secretary of State in January 2013.

**BACKGROUND**

This appeal involves three separate, but related, proceedings involving Appellants: (1) two lawsuits filed against Appellants by certain citizens of Fort Worth contesting Wendy Davis's eligibility to be a candidate in the 2008 Democratic primary election (the *Cerda* lawsuits), (2) a lawsuit filed against Appellants by a Republican candidate contesting Davis's eligibility as a candidate in the 2008 general election (the *Brimer* lawsuit), and (3) the suit filed by Appellants against the Secretary of State for reimbursement of attorney's fees incurred in defending the *Brimer* lawsuit (the underlying lawsuit).

**A.     The *Cerda* Lawsuits**

In 2007, Wendy Davis was serving as a member of the Fort Worth City Council. She resigned her city council seat and filed her application for the State Senate District 10 race. When Davis filed her application, certain Fort Worth-area citizens challenged her eligibility for the primary election ballot in two original proceedings naming TCDP's and TDP's chairs as respondents.[4]

The *Cerda* lawsuits sought the removal of Davis's name from the primary election ballot. The petitioners contended that Davis was constitutionally ineligible as a senatorial candidate because she had not yet completed her paid city council term when she filed her application. *See* TEX. CONST. art. III, § 19 ("No . . . person holding a lucrative office under . . . this State . . . shall during the term for which he is elected or appointed, be eligible to the Legislature.").

---

[4] The original proceedings were *In re Cerda*, Petition for Writ of Mandamus, *In re Cerda*, No. 08-0028, 2008 WL 489291, and *In re Cerda*, No. 2-08-018-CV, 2008 WL 204518 (Tex. App.—Fort Worth Jan. 23, 2008, orig. proceeding) (per curiam).

The *Cerda* lawsuits were unsuccessful; Davis ran unopposed in the March 4, 2008 Democratic primary election. Appellants sought reimbursement for their attorney's fees from the primary election fund. The Secretary of State approved the request and authorized reimbursement.

**B.      The *Brimer* Lawsuit**

About four months after the primary election, Kim Brimer[5] sued TCDP's and TDP's chairs in Tarrant County district court. *See generally Brimer v. Maxwell*, 265 S.W.3d 926 (Tex. App.—Dallas 2008, no pet.) (*Brimer* appeal). Brimer raised the same constitutional challenge to Davis's eligibility for legislative office as did the *Cerda* petitioners. Specifically, Brimer argued Davis was constitutionally ineligible for the legislature at the time she filed her application because she was still a Fort Worth City Council office holder. Brimer sought to remove Davis's name from the general election ballot. Brimer's suit was unsuccessful; Davis's name remained on the general election ballot and she won the race for State Senate District 10.

**C.      The Underlying Lawsuit**

After prevailing in the *Brimer* lawsuit, Appellants applied for reimbursement from the primary election funds for their attorney's fees. The Secretary of State denied their request on the ground that the fees were "unrelated to the administration of the primary election."

When the Secretary of State refused reimbursement, TCDP and its chair sued the Secretary of State for the attorney's fees they incurred in the *Brimer* suit and in the underlying lawsuit. Their petition claimed they were entitled to reimbursement of their attorney's fees under the Election Code by mandamus, direct suit, or declaratory judgment. TDP and its chair intervened and adopted TCDP and its chair's claims to recover their own attorney's fees. The Secretary of State answered with a general denial and asserted an "affirmative defense" of sovereign immunity. The case was

---

[5] Kim Brimer was the incumbent State Senator from District 10; he also ran unopposed for State Senate District 10 in the March 4, 2008 Republican primary election.

tried to the bench on agreed stipulated facts. The trial court rendered a take-nothing judgment against Appellants. Appellants appeal the trial court's judgment.

## STANDARD OF REVIEW

We review a bench trial on agreed stipulated facts de novo. *Amaro v. Wilson Cnty.*, 398 S.W.3d 780, 784 (Tex. App.—San Antonio 2011, no pet.); *Panther Creek Ventures, Ltd. v. Collin Cent. Appraisal Dist.*, 234 S.W.3d 809, 811 (Tex. App.—Dallas 2007, pet. denied). "We conclusively presume that the parties have brought before the court all facts necessary for the presentation and adjudication of the case." *Amaro*, 398 S.W.3d at 784; *accord Panther Creek*, 234 S.W.3d at 811; *Cummins & Walker Oil Co. v. Smith*, 814 S.W.2d 884, 886 (Tex. App.—San Antonio 1991, no writ). We are bound by the agreed facts, *Markel Ins. Co. v. Muzyka*, 293 S.W.3d 380, 384 (Tex. App.—Fort Worth 2009, no pet.); *Panther Creek*, 234 S.W.3d at 811, but we may make an inference or find a fact "embraced in the agreement [if] as a matter of law such further inference or fact is necessarily compelled by the agreed upon evidentiary facts." *See Lawler v. Lomas & Nettleton Mortg. Investors*, 691 S.W.2d 593, 595 (Tex. 1985); *Cummins & Walker*, 814 S.W.2d at 886. In sum, we review the stipulated facts and the judgment to determine whether the trial court "correctly applied the law to the agreed stipulated facts." *Amaro*, 398 S.W.3d at 784; *Panther Creek*, 234 S.W.3d at 811.

If the applicable questions of law involve statutory interpretation, we begin with the statute's plain language. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). "[W]e look first and foremost to the plain meaning of the words used." *First Am. Title*, 258 S.W.3d at 631; *accord TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). To determine the legislature's intent, we read the statute as a whole. *TGS-NOPEC*, 340 S.W.3d at 439; *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). If the plain language

is clear and unambiguous, we do not invoke rules of construction. *City of Rockwall*, 246 S.W.3d at 626. We apply the statute's plain language "unless that interpretation would lead to absurd results." *Id.* at 625–26; *accord TGS-NOPEC*, 340 S.W.3d at 439.

If we conclude the trial court erred in its judgment, we "render on the agreed facts the judgment that the trial court should have rendered." *Cobb v. Harrington*, 144 Tex. 360, 370, 190 S.W.2d 709, 715 (1945); *accord Patterson-UTI Drilling Co. v. Webb Cnty. Appraisal Dist.*, 182 S.W.3d 14, 16 (Tex. App.—San Antonio 2005, no pet.).

## *BRIMER* SUIT ATTORNEY'S FEES

### A.    Parties' Arguments

Appellants claim they are entitled to reimbursement of their *Brimer* suit attorney's fees under Election Code sections 173.001(a) and 173.086(a).[6]  *See* TEX. ELECT. CODE ANN. §§ 173.001(a), .086(a) (West 2010). They also seek reimbursement of their attorney's fees in the underlying lawsuit and this appeal based on their declaratory judgment action. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008) (authorizing reimbursement of attorney's fees in declaratory judgment actions). In response, the Secretary of State asserts immunity from suit because Appellants failed to meet the statutory prerequisites and thus their suit is jurisdictionally barred. The Secretary of State also asserts that Appellants may not bring a declaratory judgment action because they do not meet the ultra vires exception.

---

[6] In their original petition, Appellants also asserted mandamus as a basis to obtain reimbursement of their attorney's fees. Appellants failed to present any argument or authorities on mandamus in their brief; their mandamus argument is waived. *See* TEX. R. APP. P. 38.1(i); *In re Blankenship*, 392 S.W.3d 249, 259 (Tex. App.—San Antonio 2012, no pet.) (briefing waiver); *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 562 (Tex. App.—San Antonio 2011, no pet.) (same).

We first address whether the Secretary of State's immunity from suit may be waived by section 173.086(a), and then whether Appellants' suit is jurisdictionally barred by Appellants' alleged failure to comply with statutory prerequisites.

**B.  Statutory Waiver of Sovereign Immunity**

Generally, the state has sovereign immunity unless its immunity is expressly and unequivocally waived by the legislature.  *See Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002); *see also* TEX. GOV'T CODE ANN. § 311.034; *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 512 (Tex. 2012); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).  The legislature may specify "particular substantive claims for which the State will consent to suit and provide[] the procedures a litigant must follow to obtain such waiver."  *Chatha*, 381 S.W.3d at 513; *accord IT-Davy*, 74 S.W.3d at 853.

Concerning waiver, we examine Election Code section 173.086(a); it states as follows: "The authority who submitted a statement of estimated primary election expenses under this subchapter may challenge in a district court in Travis County the amount of state funds approved by the secretary of state for disbursement."  TEX. ELEC. CODE ANN. § 173.086(a).  Considering the statute's unambiguous plain language, we hold that section 173.086(a) waives the Secretary of State's sovereign immunity for a suit that complies with its requirements.  *See id.*; *Chatha*, 381 S.W.3d at 511–13; *First Am. Title*, 258 S.W.3d at 631; *City of Rockwall*, 246 S.W.3d at 625, 631.

We turn next to whether the record shows that Appellants invoked the waiver by complying with any applicable statutory prerequisites.  *See Chatha*, 381 S.W.3d at 510.

**C.  Statutory Prerequisites**

"Statutory prerequisites to a suit . . . are jurisdictional requirements in all suits against a governmental entity."  TEX. GOV'T CODE ANN. § 311.034 (West 2013); *accord Chatha*, 381 S.W.3d at 510.  A party's "statutory cause of action against a governmental entity" is

jurisdictionally barred unless it complies with the statutory prerequisites. *Chatha*, 381 S.W.3d at 512. We examine the relevant statutory provisions to determine which ones, if any, are statutory prerequisites.

*1. Discerning Statutory Prerequisites*

Not all of a statute's provisions are necessarily statutory prerequisites. *Chatha*, 381 S.W.3d at 511–12. A statutory prerequisite has three critical characteristics: (1) "a prerequisite must be found in the relevant statutory language," (2) "the prerequisite must be a requirement," and (3) "the requirement must be met before the lawsuit is filed." *Id.* at 511–12; *Dallas County Sw. Inst. of Forensic Sciences & Med. Exam'r Dept. v. Ray*, 400 S.W.3d 219, 223 (Tex. App.—Dallas 2013, pet. denied).

a.      Requirement in Statutory Language

"[A statutory] prerequisite must be found in the relevant statutory language." *Chatha*, 381 S.W.3d at 511–12. Section 173.086(a) authorizes one to "challenge in a district court in Travis County the amount of [reimbursement]" paid by the Secretary of State, but limits the set of those who may sue to "authorit[ies] who submit[] a statement of estimated primary election expenses under this subchapter." *See* Tex. Elec. Code Ann. § 173.086(a). The limiting provision is found in the relevant statutory language. *See Chatha*, 381 S.W.3d at 511–12.

b.      Prerequisite Must Be a Requirement

A "prerequisite must be a requirement." *See id.* at 512. Section 173.086(a) is the only statutory basis to challenge the Secretary of State's amount of reimbursement for a claimant's expenses. *See* Tex. Elec. Code Ann. § 173.086(a). As there is no other statutory basis for a challenge, this provision is a requirement. *See Chatha*, 381 S.W.3d at 512.

c.       Requirement Must Precede Suit

"[T]he requirement must be met before the lawsuit is filed."  *Id.*  According to the statute, an authority must submit "a written statement of estimated expenses to be incurred" to the Secretary of State.  TEX. ELEC. CODE ANN. § 173.081(a).  Upon receipt of the statement, the Secretary of State must review it and report the results of his review to the authority.  *Id.* § 173.082. The Secretary of State may make installment payments based on the statement.  *Id.* § 173.083. The authority must timely report its actual expenses, *id.* § 173.084, but may challenge the reimbursement amount only if it "submitted a statement of estimated primary election expenses under this subchapter," *id.* § 173.086(a).

There is no express requirement that the statement contain an estimate of legal expenses. *See id.* § 173.081 (requiring "itemized estimates[s] . . . of the primary expenses to be incurred" but not expressly including future legal expenses).  If an authority submitted an item of estimated expense for estimated legal expenses to defend against a suit not yet filed, *see id.* § 173.081(b)(1), the Secretary of State could simply disapprove the amount as not "reasonably necessary for the proper holding of the primary election" and disallow any installment payment for that purpose, *see id.* § 173.082(b), (c).

In sum, the statement of estimated primary election expenses must precede any claim for reimbursement, *id.* § 173.081, and the Secretary of State's decision on the claim must precede any suit, *id.* §§ 173.082, 173.086(a).

2.       *Statutory Prerequisites to a Section 173.086(a) Suit*

Considering the relevant statutory provisions, we hold that submitting a statement of estimated primary election expenses that complies with the subchapter's provisions, *e.g.*, *id.*

§ 173.081, is a statutory prerequisite,[7] and an authority's failure to do so is a jurisdictional bar to its suit. *See id.* § 173.086(a); *Chatha*, 381 S.W.3d at 512; *Ray*, 400 S.W.3d at 223–24. We further hold that including an estimate of legal expenses to defend against a suit that has not been filed is not required to satisfy the statement of estimated primary election expenses statutory prerequisite. *See* TEX. ELECT. CODE ANN. §§ 173.081, .086.

We next turn to whether the record shows Appellants complied with this statutory prerequisite.

**D. Agreed Statement of Facts**

Here, the parties chose a bench trial on agreed stipulated facts. *See* TEX. CIV. P. 263 ("Agreed Case"); *Cummins & Walker*, 814 S.W.2d at 886. The parties chose the facts to include in their stipulations; it was their responsibility to provide this court with stipulations that included all the facts "necessary for the presentation and adjudication of the case." *See Panther Creek*, 234 S.W.3d at 811; *Cummins & Walker*, 814 S.W.2d at 886. Where a party has failed to get an essential fact into the agreed facts, that party will suffer any consequences of its evidentiary failure. *Cf. Panther Creek*, 234 S.W.3d at 813.

*1. Statement of Estimated Primary Expenses*

The stipulated facts do not include any stipulation on whether TCDP or TDP filed a statement of estimated primary expenses.[8] However, we may make an inference or find a missing

---

[7] The Secretary of State contends that submitting a statement of estimated primary expenses that includes an estimated amount of legal expenses is a statutory prerequisite. We are not presented with, and do not address, whether any other statutory provisions are also statutory prerequisites. *See* TEX. R. APP. P. 38.1(i); *In re Blankenship*, 392 S.W.3d at 259 (briefing waiver); *Prize Energy*, 345 S.W.3d at 562 (same).

[8] Appellants provided post-submission documents stating that a statement of estimated primary expenses was filed. The documents were not before the trial court, they are not part of the appellate record and, therefore, we do not consider them. *See Perry v. S.N.*, 973 S.W.2d 301, 303 (Tex. 1998) ("We may not consider factual assertions that appear solely in the appellate briefs and not before the trial court."); *Sabine Offshore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979) ("Affidavits outside the record cannot be considered by the Court of Civil Appeals for any purpose other than determining its own jurisdiction.").

fact if "as a matter of law such further inference or fact is necessarily compelled by the agreed upon evidentiary facts." *See Lawler*, 691 S.W.2d at 595; *Cummins & Walker*, 814 S.W.2d at 886.

In this case, the stipulated facts compel the conclusion that either Appellants filed a statement of estimated primary expenses or the Secretary of State waived the statutory prerequisite. To be reimbursed for their *Cerda* suits' attorney's fees, Appellants were required to file a statement of estimated primary expenses with the Secretary of State. *See* TEX. ELECT. CODE ANN. § 173.081. The Secretary of State was not obligated to pay the *Cerda* fees unless Appellants filed a statement of estimated primary expenses. The parties stipulated that the Secretary of State paid the *Cerda* fees. Thus, either Appellants met the statutory requirement by filing a statement of estimated primary expenses or the Secretary of State waived any complaint about the requirement.

Because a statement of estimated primary expenses is filed for an election—that may cover several candidates and any corresponding lawsuits—we conclude that the same conclusion applies to the *Brimer* suit fees claim. Therefore, we conclude as a matter of law that for the *Brimer* suit, the statement of estimated primary expenses requirement was either met or waived. *See Lawler*, 691 S.W.2d at 595; *Cummins & Walker*, 814 S.W.2d at 886.

We next turn to the basis for the Secretary of State's denial of Appellants' request for reimbursement of the *Brimer* suit fees.

**E.     Reach of "In Connection With"**

The Secretary of State's December 19, 2008 letter to TCDP's chair explained that the Secretary of State would not authorize reimbursement for the *Brimer* suit fees because the litigation was "unrelated to the administration of the primary election." The Secretary of State's trial and appellate briefs reiterate that the *Brimer* suit was filed months after the primary election was over, the relief sought pertained only to the general election, and thus the *Brimer* suit expenses were unrelated to the administration of the primary election. Appellants contend that the *Brimer*

suit fees were incurred in connection with the primary election because the only basis of Brimer's complaint was ***Davis's alleged constitutional ineligibility to submit her application for the primary election***. They criticize the Secretary of State's inconsistency for denying reimbursement of their *Brimer* suit legal expenses but authorizing reimbursement in the *Cerda* suits when the ineligibility complaint in the *Brimer* and *Cerda* suits was exactly the same. The crucial question in this appeal is whether the legislature intended to reimburse from state primary election funds a party's legal expenses for an election contest suit that seeks general election relief but is based on a complaint that the candidate was ineligible to appear on the primary election ballot. *See* TEX. ELECT. CODE ANN. § 173.001(a), (c) (code sections); *TGS-NOPEC*, 340 S.W.3d at 439 (discerning legislative intent).

The legislature allows the Secretary of State to "pay expenses incurred by a political party in connection with a primary election" or "in connection with the administration of primary elections." TEX. ELECT. CODE ANN. § 173.001(a), (c). The phrase "in connection with" has a broad reach. *See Ex parte Ellis (Ellis II)*, 309 S.W.3d 71, 88 (Tex. Crim. App. 2010); *Osterberg v. Peca*, 12 S.W.3d 31, 51 (Tex. 2000); *Ex parte Ellis (Ellis I)*, 279 S.W.3d 1, 21 (Tex. App.—Austin 2008), *aff'd but criticized,* 309 S.W.3d 71 (Tex. Crim. App. 2010). Concerning its reach, "[w]e presume the legislature intended it to be broad," *Ellis I*, 279 S.W.3d at 21, and we construe the statute accordingly, *see City of Rockwall*, 246 S.W.3d at 625.

The *Brimer* suit sought general election relief: it sought to remove Davis's name from the general election ballot. But the basis for the complaint was that Davis was constitutionally ineligible to submit her application for the primary election. Considering the broad reach of "in connection with," we cannot say the legislature intended to exclude reimbursement of attorney's fees for a suit defending against a complaint that the candidate was ineligible to participate in the primary election. The plain language of the statute—"in connection with a primary election"—

does not exclude a suit seeking general election relief from the set of suits that are in connection with a primary election. *See* TEX. ELECT. CODE ANN. § 173.001(a).

Because we construe "in connection with" broadly, and the basis of the *Brimer* suit complaint was Davis's constitutional ineligibility to file an application to appear on the primary election ballot, we hold that the *Brimer* suit attorney's fees are in connection with the primary election. *See id.*; *Ellis II*, 309 S.W.3d at 88; *Osterberg*, 12 S.W.3d at 51.

## F.     *Brimer* **Suit Fees Award**

In summary, Appellants met the statutory prerequisites to suit—or the Secretary of State waived any such complaints—and the Secretary of State's immunity from suit was waived. *See, e.g.*, TEX. ELECT. CODE ANN. §§ 173.081, .082, 083, .086(a). Appellants' *Brimer* suit attorney's fees were in connection with the primary election. *See id.* § 173.001(a); *Ellis II*, 309 S.W.3d at 88; *Osterberg*, 12 S.W.3d at 51. The parties stipulated that the reasonable and necessary attorney's fees in the *Brimer* suit were $15,953.91 for TCDP and $10,632.57 for TDP. Therefore, Appellants are entitled to their *Brimer* suit attorney's fees as stipulated. *See* TEX. ELECT. CODE ANN. § 173.086(c).

We turn next to Appellants' claim for attorney's fees in the underlying lawsuit.

## DECLARATORY JUDGMENT ACTION

Appellants also argue that the Uniform Declaratory Judgment Act allows them to recover attorney's fees in the underlying lawsuit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (authorizing attorney's fees). They cite *City of El Paso v. Heinrich* for the proposition that "where statutory or constitutional provisions create an entitlement to payment, suits seeking to require state officers to comply with the law are not barred by immunity merely because they compel the state to make those payments." *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 371 (Tex. 2009).

However, "[t]o fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* at 372; *cf. Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011) ("[T]here is no general right to sue a state agency for a declaration of rights."). To decide whether the ultra vires exception applies, we must determine whether the Secretary of State acted outside his authority or had discretion to deny Appellants' reimbursement claim. *See Heinrich*, 284 S.W.3d at 372.

## A.       The Secretary of State's Discretion

By statute, the Secretary of State has discretion to determine what estimated expenses are "reasonably necessary for the holding of the primary election." TEX. ELECT. CODE ANN. § 173.082(b). If the Secretary of State determines an estimated expense is reasonably necessary, the Secretary must approve the expense. *Id.* If the Secretary of State determines that part or all of an estimated expense is not reasonably necessary, that item or portion thereof may not be reimbursed from primary funds. *Id.* § 173.082(d). Once the actual expenses are known, if an actual expenditure exceeds the estimated amount, the provisions of section 173.085 control. *Id.* § 173.085(a). If, in the Secretary's discretion, the Secretary of State determines that part or all of an excess expense is supported by good cause, the Secretary of State must approve the payment. *Id.* § 173.085(c).

## B.       The Secretary of State's Action not Ultra Vires

Appellants assert that the ultra vires exception applies because the Secretary of State had no discretion to deny their *Brimer* suit fees. They cite section 173.086(c) to show the statute "us[es] terms of entitlement and mandatory payment" that compel the Secretary of State to authorize their reimbursement request. *See* TEX. ELECT. CODE ANN. § 173.086(c).

But 173.086(c) requires the *court* to "order payment in the proper amount" only *if* the court decides the claimant is entitled to the additional reimbursement. *Id.* Although section 173.086(c) uses some terms conditionally compelling a court to act, the section does not strip the Secretary of State of all other discretion or, in this case, compel the Secretary of State to reimburse Appellants' *Brimer* suit fees. We hold that the legislature has expressly granted the Secretary of State discretion[9] to determine what expenses are "reasonably necessary for the proper holding of the primary election," *see* TEX. ELECT. CODE ANN. § 173.082(b), and discretion to determine good cause in cases of requests for reimbursement of excess expenses, *see id.* § 173.085.

Under the facts of this case, the Secretary of State acted within his discretion, and the ultra vires exception is not available to Appellants. Thus, Appellants are not entitled to attorney's fees in the underlying lawsuit or in this appeal.

## GOOD CAUSE JUSTIFYING PAYMENT

Although we briefly mentioned the Secretary of State's discretion in determining good cause for payment of excess expenses, because that provision applies in this case, we must more fully consider the Secretary of State's determination of good cause. Under the code, "[t]he secretary of state shall approve the payment of the excess expense with state funds if the secretary determines that payment is justified by good cause." TEX. ELEC. CODE ANN. § 173.085(c) (West 2010). If the Secretary of State determines that payment is not justified, the excess expense "may not be paid with state funds." *Id.* § 173.085(e). In effect, the payment approval for an excess expense turns on good cause.

---

[9] The Secretary of State's discretion is not unlimited, but we need not define its entire scope here.

**A.      Definition of Good Cause for Excess Legal Expenses**

To determine the statutory meaning of good cause, we look first to the Election Code itself for a definition and its uses of the phrase.  The Election Code uses the phrase "good cause" approximately ten times; four of those uses are in chapter 173, Primary Election Financing, but the code does expressly define good cause.  We have found no case that addresses this specific statute, but we may look to other decisions for guidance.

Here, *Hawkins v. Safety Casualty Co.* provides a helpful analog.  *See Hawkins v. Safety Cas. Co.*, 146 Tex. 381, 384, 207 S.W.2d 370, 372 (1948) (defining good cause in a workers compensation claim suit).  In *Hawkins*, the court noted that good cause was not defined in the worker's compensation statute, but it looked to an "ordinary prudence" test.  As *Hawkins* explained, the test is "whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances."  *Id.* We may apply *Hawkins*'s diligence and prudent person guidance to the Election Code.

   *1.      Diligence*

Diligence may be defined as "[a] continual effort to accomplish something" or "[c]are; caution; the attention and care required from a person in a given situation."  BLACK'S LAW DICTIONARY 488 (8th ed. 2004); *cf. El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 809 (Tex. 2012) (citing Black's for a definition of due diligence).  To determine the test for diligence with respect to an excess expense reimbursement request, we look to the Election Code's provisions.  An authority must contact the Secretary of State before it enters into a contract for legal services.  TEX. ADMIN. CODE ANN. § 81.134(d).  It must notify the Secretary of State within three days of receiving service of process.  *Id.* § 81.134(e).  It must provide a written estimate to the Secretary of State within fourteen days after it retains counsel.  *Id.* § 81.134(f).  Finally, it must file its final invoice for legal expenses by July 1 of the year following the election.  *Id.* § 81.134(h).

*2.	Prudent Person*

Generally, a prudent person is one who is "[c]ircumspect or judicious in [the person's] dealings; cautious." BLACK'S LAW DICTIONARY 1263 (8th ed. 2004); *cf. El Paso Field Servs.*, 389 S.W.3d at 809. In the context of statutory requirements, we conclude that a prudent person would comply with any applicable statutory requirements. In this case, the statute requires an authority to submit for reimbursement only those litigation expenses that concern the conduct of the primary election. TEX. ADMIN. CODE ANN. 81.134(c). The statute proscribes reimbursement for any negligent or wrongful acts. *Id.* § 81.134(b).

We hold that for section 173.085 of the Election Code, good cause for excess expense reimbursement includes timely compliance with each of the applicable statutory requirements or justification that shows the authority exercised the diligence of a prudent person but was otherwise prevented from completing the requirements by causes outside the authority's control. Having defined the applicable standard for good cause to justify reimbursement of an excess expense, we examine the evidence in this case.

**B.	Evidence of Good Cause**

Here, on the question of good cause, there are no express stipulations. Therefore, we examine the stipulations that pertain to diligence and prudent persons.

*1.	Diligence*

We first examine the stipulated facts to ascertain Appellants' diligence: their efforts to accomplish their objective—to obtain reimbursement for their *Brimer* suit attorney's fees. *See* BLACK'S LAW DICTIONARY 488 (8th ed. 2004) (diligence); *cf. El Paso Field Servs.*, 389 S.W.3d at 809.

Under the code, Appellants were required to file a statement of estimated primary expenses forty-five days before the primary election. TEX. ELECT. CODE ANN. § 173.081(c)(2). But the

*Brimer* suit was not filed until *after* the primary election, and Appellants' statement of estimated primary expenses could not have contained an estimate of legal expenses for a suit that had not been filed. Next, Appellants had to contact the Secretary of State before entering into a contract for legal services, TEX. ADMIN. CODE ANN. § 81.134(d), notify the Secretary of State within three days of receiving service of process, *id.* § 81.134(e), and provide a written estimate to the Secretary of State within fourteen days after they retained counsel, *id.* § 81.134(f).

There are no stipulations that Appellants failed to meet any of these requirements, or that Appellants were otherwise not diligent in pursuing reimbursement of their *Brimer* suit fees. In fact, the stipulated facts show that Appellants submitted their reimbursement requests about seven months before the applicable deadline. *See id.* § 81.143(h) (deadline). Less than thirty days after the Secretary of State denied their reimbursement request, Appellants asked the Secretary of State to reconsider his decision. When he declined, Appellants timely filed a suit in the required venue to challenge the Secretary of State's decision. *See id.* § 173.086(a) (statutory waiver of immunity).

Given these facts, we conclude that Appellants exercised the required diligence. *Cf. El Paso Field Servs.*, 389 S.W.3d at 809.

### 2. *Prudent Persons*

To act as prudent persons, Appellants had to submit for reimbursement only those litigation expenses that concerned the conduct of the primary election. TEX. ADMIN. CODE ANN. 81.134(c). Based on the plain language of the statute and the Administrative Code, and the Secretary of State's decision to pay the attorney's fees in the *Brown*[10] and *Cerda* suits, prudent persons could have

---

[10] In their briefs, Appellants cited the facts underlying *In re Brown* to show the Secretary of State reimbursed attorney's fees in equivalent circumstances underlying their *Brimer* suit fees request. *See In re Brown*, No. 05-06-00408-CV, 2006 WL 1063767 (Tex. App.—Dallas Apr. 24, 2006, orig. proceeding) (mem. op.) (denying an incumbent's petition to remove a competing candidate's name from the general election ballot).

believed that Appellants' *Brimer* suit fees were litigation expenses that were in connection with the primary election. There is no stipulation of Appellants' imprudence such as seeking reimbursement for any negligent or wrongful acts. *See* TEX. ADMIN. CODE ANN. § 81.134(b). In fact, the Secretary of State stipulated that Appellants' *Brimer* suit attorney's fees were reasonable and necessary. The only basis shown in the stipulations for the Secretary of State's decision to deny Appellants' *Brimer* suit fees was that they were "unrelated to the administration of the primary election."

On this record for a bench trial on stipulated facts, we conclude as a matter of law that a payment from state funds for the *Brimer* suit attorney's fees was justified by good cause. *See* TEX. ELECT. CODE ANN. § 173.085(c). Therefore, the Secretary of State was required to approve the payment. *See id.*

Having decided that Appellants are entitled to reimbursement for their *Brimer* suit fees, we turn next to Appellants' claim for postjudgment interest.

### POSTJUDGMENT INTEREST

Appellants pled and prayed for postjudgment interest, and we must determine whether they are entitled to it.

Because Appellants complied with the requirements to waive the Secretary of State's immunity from suit, the Secretary of State had the burden to plead and prove his affirmative defense of immunity from liability. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) ("Like other affirmative defenses to liability, [immunity from liability] must be pleaded or else it is waived."); *cf. Cobb v. Harrington*, 144 Tex. 360, 370, 190 S.W.2d 709, 715 (1945) (regarding pleadings as "immaterial" in a case tried on an agreed statement of facts).

In his answers, the Secretary of State pled the affirmative defense of sovereign immunity, which comprises immunity from liability. *See Miranda*, 133 S.W.3d at 224. But merely pleading the affirmative defense is not enough: the Secretary of State had the burden to prove his defense, or in this case, to obtain a stipulation to that effect. *See Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 164 (Tex. 2012); *Tex. Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879–80 (Tex. 1999). There is no stipulation that the Secretary of State proved any affirmative defense against postjudgment interest. *See* TEX. R. APP. P. 33.1 (preservation of appellate complaints); *Robertson Cnty. v. Wymola*, 17 S.W.3d 334, 344 (Tex. App.—Austin 2000, pet. denied) (citing TEX. FIN. CODE ANN. § 304.002, .003. (West 2006)) (noting that the county waived its complaint about postjudgment interest by failing to raise the issue with the trial court). Therefore, we necessarily conclude that the Secretary of State waived his affirmative defense and Appellants are entitled to postjudgment interest.

## CONCLUSION

For the reasons given above, we conclude as a matter of law that Appellants' *Brimer* suit attorney's fees were in connection with the primary election. The Secretary of State had discretion to determine if payment was justified by good cause, but the agreed statement of facts contains no such stipulations. However, as a matter of law, we conclude that under the facts of this case, the payment of Appellants' *Brimer* suit attorney's fees was justified by good cause and Appellants are entitled to reimbursement. Because the Secretary of State waived his immunity from liability defense, Appellants are also entitled to postjudgment interest. However, the ultra vires exception does not apply, and Appellants are not entitled to attorney's fees for the underlying lawsuit or this appeal.

Therefore, we reverse the portion of the trial court's judgment that denied Appellants their *Brimer* suit attorney's fees and render judgment that TCDP and TDP are entitled to reimbursement

of their attorney's fees in the amounts of $15,953.91 and $10,632.57 respectively, and both are entitled to postjudgment interest.  We affirm the remainder of the trial court's judgment.


Patricia O. Alvarez, Justice